# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:08CR134-RJC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| | ) | **AND ORDER** |
| | ) | |
| ALEJANDRO ENRIQUE RAMIREZ UMANA, | ) | |
| a/k/a "Wizard" | ) | |
| "Lobo" | ) | |
| | ) | |
| **Defendant.** | ) | |

**THIS MATTER** is before the Court on the "Defendant's Motion to Dismiss Counts for Improper Venue or In the Alternative, for a Change of Venue to the Middle District of North Carolina" (document #480) filed April 24, 2009 and "Government's Consolidated Response to the Motions of the Defendant Filed April 24, 2009" (document #503) filed May 8, 2009.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that the Defendant's Motion to Dismiss Counts for Improper Venue be <u>denied</u>, as discussed below, and the Court **DENIES** Defendant's Motion for Change of Venue, as discussed below.

## I. BACKGROUND

La Mara Salvatrucha, also known as the MS-13 gang (hereafter "MS-13"), is a gang composed primarily of immigrants or descendants of immigrants from El Salvador, with members operating throughout North Carolina. According to the Second Superseding Indictment, on or about

1

December 8, 2007, Defendant Alejandro Enrique Ramirez Umana, a member of MS-13, murdered Ruben Garcia Salinas and his brother, Manuel Garcia Salinas, in a crowded Mexican restaurant in Greensboro, North Carolina. On December 16, 2008, Defendant was charged in a Second Superseding Indictment with the following offenses: Count 1, a RICO conspiracy; Counts 22 and 24, two murders in aid of racketeering; Counts 23 and 25, the same two murders charged as the use and possession of a firearm during and in relation to a crime of violence resulting in death; Count 27, possession of firearm by illegal alien; Count 28, a Hobbs Act robbery; Count 58, a Hobbs Act extortion conspiracy; Count 61, a conspiracy to obstruct justice and tamper with witnesses; Count 62, obstruction of justice; and Count 63, tampering with a witness.

Defendant argues for dismissal or in the alternative seeks a change of venue to the Middle District of North Carolina with respect to Count 1 which alleges a RICO conspiracy, Counts 22-25 which allege federal crimes associated with the murders of the Salinas brothers in Greensboro, North Carolina and Counts 61-63 which charge various offenses related to conspiracy, obstruction of justice and witness tampering.

Article III of the Constitution requires that "[t]he Trial of all Crimes. . . shall be held in the State where the said Crimes shall have been committed." U.S. Const. art. III, § 2, cl.3. This mandate is reinforced by the Sixth Amendment's requirement that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. These constitutional safeguards are meant to "protect the defendant from bias, disadvantage, and inconvenience in the adjudication of the charges against him." United States v. Ebersole, 411 F.3d 517, 524 (4th Cir. 2005). Rule 18 of the Federal Rules of Criminal Procedure codifies the constitutional requirements, stating that

"prosecution shall be had in a district in which the offense was committed."

"In accordance with these constitutional principles, Congress may, if it so desires, prescribe specific venue requirements for a particular crime." United States v. Johnson, 510 F.3d 521, 524 (4th Cir. 2007). "Where venue requirements are met, the prosecution may proceed in that district, notwithstanding the possibility that the gravamen of the wrongdoing took place elsewhere." United States v. Smith, 452 F.3d 323, 334 (4th Cir. 2006).

If Congress does not explicitly provide for venue when it enacts a criminal statute, the Supreme Court has held that "the 'locus delicti' of the charged offense must be determined from the nature of the crime alleged and the location of the act or acts constituting it." United States v. Cabrales, 524 U.S. 1, 6-7 (1998) (quoting United States v. Anderson, 328 U.S. 699, 703 (1946)). "In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts." United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999); see also United States v. Smith, 452 F.3d 323, 334-335 (4th Cir. 2006) (finding that venue determination is twofold inquiry.); United States v. Bowens, 224 F.3d 302, 311 (4th Cir. 2000) (holding "that the place where a criminal offense is committed is determined solely by the essential conduct elements of that offense.").

The venue determination is also guided by the general venue provisions for federal criminal offenses, set forth in 18 U.S.C. §§ 3231-3244. Venue must be proven by a mere preponderance of the evidence, and all such evidence must be viewed in a light most favorable to the government. United States v. Burns, 990 F.2d 1426, 1436-37 (4th Cir. 1993). In a case where defendant is charged with multiple counts, venue must lie as to each individual count. See United States v. Smith, 452 F.3d at 335; United States v. Robinson, 275 F.3d 371, 378 (4th Cir. 2001); United States v. Villarini,

3

238 F.3d 530, 533 (4th Cir. 2001). For some offenses, there may be "more than one appropriate venue, or even a venue in which the defendant has never set foot." United States v. Bowens, 224 F.3d 302, 311 (4th Cir. 2000).

## II. DISCUSSION

### A. COUNTS 22 and 24-MURDER IN AID OF RACKETEERING

Defendant is charged in Counts 22 and 24 of the Second Superceding Indictment with committing a murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(1). Section 1959 provides punishment by death or life imprisonment if a murder is committed either "as consideration for the receipt of, or as consideration for a promise or agreement to pay anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity." Counts 22 and 24 each specifically allege that the respective murders were committed "for the purpose of maintaining and increasing position in MS-13, an enterprise engaged in racketeering activity."

Defendant argues that in Counts 22 and 24, the only essential conduct element is the unlawful killing of each victim. Therefore, venue can lie only in the Middle District of North Carolina where the actual killings allegedly took place. Defendant bases this argument on 18 U.S.C. §3236 which states that "the offense shall be deemed to have been committed at the place where the injury was inflicted."

Courts have held that a Section 1959 violation constitutes a "continuing offense" and therefore, venue is properly governed by 18 U.S.C. § 3237(a), which provides that "[e]xcept as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired or

4

prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). See United States v. Saavedra, 223 F.3d 85, 88-94 (2d Cir. 2000); United States v. Williams, 181 F. Supp.2d 267, 290-92 (S.D.N.Y. 2001); United States v. Aiken, 76 F. Supp.2d 1346, 1349-51 (S.D. Fla. 1999); United States v. DeJesus, 48 F.Supp.2d 275, 278 (S.D.N.Y. 1998); United States v. Perez, 940 F. Supp. 540, 547-49 (S.D.N.Y. 1996).

The case of United States v. Saavedra, 223 F.3d 85 (2d Cir. 2000) is especially instructive in the case at bar. In Saavedra, the Second Circuit examined whether the Southern District of New York was a proper venue for prosecuting defendants for "conspiring to commit and attempting to commit an assault in aid of racketeering" where defendants, members of the Latin Kings gang, committed all the overt acts in planning and carrying out an assault in the Eastern District of New York but the Latin Kings organization was headquartered in the Southern District of New York. Id. At 86-87. The Court found that the racketeering element of Section 1959

> [P]roscribes conduct that occurs as an inextricable part of the racketeering enterprise, and an effort by defendant to 'maintain or increase' his authority or position in a racketeering organization. The statute does not proscribe conduct that occurs 'after the fact' of another offense committed and completed by others . . .The racketeering element in this case is not a mere 'circumstance' of the § 1959 offense-it is an essential element of that crime.

Id. at 91-92. The Second Circuit went on to hold that venue in the Southern District of New York was proper "because the racketeering element of the § 1959 violation serves as a continuing thread between Manhattan, the epicenter of the Latin Kings' racketeering operations, and Brooklyn, the site where the conspiracy in this case was formed and the assault against Sierra was planned to take place." Id. at 92.

While it is true that the murders allegedly occurred in the Middle District of North Carolina, in Greensboro, because § 1959 is a continuing offense and the racketeering element is an essential

5

element of the crime, venue is proper in any district where the racketeering enterprise operated. The government asserts that many of the central activities of the MS-13 operations alleged in this case occurred in the Western District of North Carolina, in Charlotte. Specifically, many of the meetings of MS-13 were held in Charlotte, and to the extent that meetings were held elsewhere, these meetings were designed to control and affect the operations of the Charlotte MS-13. Additionally, the government asserts that a substantial portion of the criminal activity occurred and was centered in Charlotte. Finally, the government asserts that Defendant used members of MS-13 from Charlotte as a mechanism to escape after the murders occurred in Greensboro. In fact, shortly after his escape to Charlotte, which occurred within an hour or two of the commission of the murders, Defendant allegedly participated directly in MS-13 criminal acts in Charlotte.

In Counts 22 and 24, Defendant was not simply charged with murdering the two victims but rather, the Government charged and will have to prove at trial that Defendant committed the murders for the purpose of maintaining and increasing his position in the MS-13 gang, an enterprise engaged in racketeering activity. These Counts allege that Defendant committed these murders in aid of racketeering "in Guilford County, within the Middle District of North Carolina, and in Mecklenburg County, within the Western District of North Carolina and elsewhere." Therefore, the "racketeering" element of § 1959 was allegedly committed in more than one district, one of which was the Western District of North Carolina and consequently, venue is proper in this district pursuant to 18 U.S.C. § 3237(a). Accordingly, the undersigned recommends that Defendant's Motion to Dismiss for Lack of Venue regarding Counts 22 and 24 be <u>denied</u> and the Court DENIES Defendant's Motion for Change of Venue regarding Counts 22 and 24.

## B. COUNTS 23 AND 25-USE AND POSSESSION OF A FIREARM DURING AND IN RELATION TO A CRIME OF VIOLENCE RESULTING IN DEATH

Defendant is charged in Counts 23 and 25 of the Second Superceding Indictment with use and possession of a firearm during and in relation to a crime of violence resulting in death in violation of 18 U.S.C. § 924(c) and (j)(1). Defendant argues that the crime of violence alleged as the underlying offense in each of these counts is murder in aid of racketeering, the same offense alleged in Counts 22 and 24, and therefore, venue is only proper in the Middle District of North Carolina because that is where the alleged murders occurred.

Section 924(c) prohibits using or carrying a firearm "during and in relating to any crime of violence." Section 924(j), in turn, punishes "[a] person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm." Thus, the conduct elements of a § 924(j) violation are (1) the use of a firearm to cause the death of a person and (2) the commission of a § 924(c) violation. The essential elements of a § 924(c) offense are use of a firearm and commission of a crime of violence, in this case, murder in aid of racketeering. See United States v. Rodriguez-Moreno, 526 U.S. 275, 282 (1999); United States v. Smith, 452 F.3d 323, 335-36 (4th Cir. 2006); United States v. Robinson, 275 F.3d 371, 378 (4th Cir. 2001).

In Rodriguez-Moreno, the Supreme Court addressed the proper venue for a charge under § 924(c)(1). The Court found that "Congress proscribed both the use of the firearm *and* the commission of acts that constitute a violent crime." Id. at 281 (emphasis in original). Therefore, when the underlying crime of violence is a continuing offense that may be prosecuted in more than one jurisdiction under 18 U.S.C. § 3237(a), the related § 924(c)(1) charge is also a continuing offense. Id. at 282. The Court concluded that "[w]here venue is appropriate for the

underlying crime of violence, so too is it for the § 924(c)(1) offense." Id.

As discussed above, venue for Counts 22 and 24, the murder in aid of racketeering charges, is proper in the Western District of North Carolina. Therefore, venue for Counts 23 and 25 is also proper in the Western District of North Carolina. Accordingly, the undersigned recommends that Defendant's Motion to Dismiss for Lack of Venue regarding Counts 23 and 25 be <u>denied</u> and the Court DENIES Defendant's Motion for Change of Venue regarding Counts 23 and 25.

### C. COUNT 1-RICO CONSPIRACY

Defendant is charged in Count 1 of the Second Superceding Indictment with being a member of a racketeering enterprise, MS-13, and conspiring to participate in the affairs of that enterprise through a pattern of racketeering activity, also known as a RICO conspiracy, in violation of 18 U.S.C. § 1962(d). Defendant argues that the primary overt acts involving conduct by Defendant in this Count are acts that occurred in Greensboro, and thus, venue is only proper in the Middle District of North Carolina.

Racketeering offenses under 18 U.S.C. § 1962 are continuing offenses, and pursuant to 18 U.S.C. § 3237(a), venue is proper "in any district in which such offense was begun, continued, or completed." <u>See, e.g.,</u> <u>United States v. Aiken,</u> 76 F. Supp. 2d 1346, 1349-51 (S.D. Fla. 1999) (RICO and its closely related offenses under 18 U.S.C. § 1959 are continuing offenses, and therefore venue lies in the Southern District of Florida and the Eastern District of New York for a murder committed in the Eastern District of New York to further a RICO enterprise that operated in that district and in the Southern District of Florida); <u>United States v. DeJesus</u>, 48 F. Supp. 2d 275, 278 (S.D.N.Y. 1998) ("Racketeering offenses under 18 U.S.C. § 1962 are continuing offenses within the

8

meaning of the venue statute."); United States v. Giovanelli, 747 F. Supp. 875, 884 (S.D.N.Y. 1989) (RICO substantive and conspiracy offenses are continuing offenses, and regarding the RICO conspiracy charge, "venue may properly be laid in the district in which the conspiratorial agreement was formed or in any district in which an overt act in furtherance of the conspiracy was committed by any of the conspirators.") (citation omitted); United States v. Castellano, 610 F. Supp. 1359, 1388-89 (S.D.N.Y.1985) (venue proper in any district where offense was begun, continued, or completed, even though virtually every racketeering act occurred in another district).

A RICO charge may include racketeering acts that occurred in districts other than the district of venue, and if venue for the overall charge is proper, it is not necessary that each defendant participate in conduct within the district of the indictment. See, e.g., United States v. Pepe, 747 F.2d 632, 660 n.44, 664 n.56 (11th Cir.1984) (venue in RICO case for extortionate debt collection that occurred in New York was proper in Southern District of Florida where other racketeering activities occurred); United States v. Persico, 621 F. Supp. 842, 858 (S.D.N.Y. 1985) (holding that it makes no difference whether any individual defendant was in the district, as long as the government establishes that the defendant participated in an enterprise that conducted illegal activities in the district).

As discussed above, racketeering offenses occurred in the Western District of North Carolina. Consequently, venue with regard to Count 1 is proper in the Western District of North Carolina even if the overt acts charged with regard to Defendant all took place in the Middle District of North Carolina. Therefore, the undersigned recommends that Defendant's Motion to Dismiss for Lack of Venue regarding Count 1 be denied and the Court DENIES Defendant's Motion for Change of Venue regarding Count 1.

### D. COUNTS 61, 62 AND 63-CONSPIRACY, OBSTRUCTION OF JUSTICE AND TAMPERING WITH WITNESSES

Defendant is charged in the Second Superceding Indictment with Count 61, conspiracy to obstruct justice and tamper with witnesses in violation of 18 U.S.C. § 371, Count 62, obstruction of justice in violation of 18 U.S.C. § 1503 and Count 63, tampering with witnesses in violation of 18 U.S.C. § 1512(b)(1). Defendant argues that because the main part of this alleged conduct occurred in the Middle District of North Carolina, venue is only proper in that district.

As noted above, "Congress may, if it so desires, prescribe specific venue requirements for a particular crime." U.S. v. Johnson, 510 F.3d 521, 524 (4th Cir. 2007). In 1988, Congress amended Title 18, United States Code, Section 1512 by adding a venue provision, which now appears in subsection (i), and states:

> A prosecution under this section or section 1503 may be brought in the district in which the official proceeding (whether or not pending or about to be instituted) was intended to be affected, or in the district in which the conduct constituting the alleged offense occurred.

The statute is clear that venue for either § 1512 or § 1503, as alleged in Counts 62 and 63, is proper in the district of the official proceeding. In the instant case, the official proceeding and grand jury investigation were in fact ongoing in Charlotte at the time of the offenses. Therefore, venue is proper in the Western District of North Carolina with regard to Counts 62 and 63.

Count 61 alleges a conspiracy to obstruct justice and tamper with witnesses. In a conspiracy case, the Supreme Court has long held that venue is proper in any district in which a conspirator performs an overt act in furtherance of the conspiracy or performs acts that effectuate the object of the conspiracy, even though there is no evidence that the defendant had ever entered that district or that the conspiracy was formed in that district. Hyde v. United States, 225 U.S. 347, 356-67 (1912).

The Fourth Circuit has recognized that "in a conspiracy charge, venue is proper for all defendants wherever the agreement was made or wherever any overt act in furtherance of the conspiracy transpires." United States v. Bowens, 224 F.3d 302, 311 n.4 (4th Cir. 2000). Moreover, the Fourth Circuit has held that the acts of one member of a conspiracy can be attributed to all other co-conspirators for venue purposes. United States v. Al-Talib, 55 F.3d 923, 928-29 (4th Cir. 1995). The overt act or acts necessary to support venue do not have to be substantial. United States v. Mitchell, 70 Fed. Appx. 706, 711, unpublished (4th Cir. 2003)(citing United States v. Ramirez-Amaya, 812 F 2d. 813, 816 (2d Cir.1987) (finding venue proper when cocaine flown over district); United States v. Shearer, 794 F 2d. 1545, 1550-51 (11th Cir. 1996) (finding venue proper based on automobile trip through and an airplane flight over district); United States v. Lewis, 676 F 2d. 508, 511 (11th Cir.1982) (finding venue proper based on telephone calls to district in furtherance of conspiracy); United States v. Prueitt, 540 F 2d. 995, 1006 (9th Cir. 1976) (finding venue proper when marijuana flown over district); United States v. Williams, 536 F 2d. 810, 812 (9th Cir. 1976) (finding venue proper based on conspirator's flight over district en route to obtain marijuana)).

In the instant case, the conspiracy offense allegedly includes acts of communication between the Middle District of North Carolina and the Western District of North Carolina, and travel of the co-conspirators from one district to another. Consequently, venue for Count 61 is proper in the Western District of North Carolina.

Accordingly, the undersigned recommends that Defendant's Motion to Dismiss for Lack of Venue regarding Counts 61, 62 and 63 be denied and the Court DENIES Defendant's Motion for Change of Venue regarding Counts 61, 62 and 63.

## III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that the Defendant's "Motion to Dismiss Counts for Improper Venue" be **DENIED**.

## IV. ORDER

**FOR THE FOREGOING REASONS**, the Defendant's "Motion to Change Venue to the Middle District of North Carolina" is **DENIED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after service of same. Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder, 889 F.2d at 1365. Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Diamond, 416 F.3d at 316; Wells, 109 F.3d at 201; Page, 337 F.3d at 416 n.3; Thomas v. Arn, 474 U.S. 140, 147 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum And Recommendation And Order to counsel for the parties; <u>and to the Honorable Robert J. Conrad, Jr</u>.

**SO ORDERED AND RECOMMENDED.**

Signed: May 20, 2009

David S. Cayer
United States Magistrate Judge