# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | DOCKET NO. 3:08CR134-2-RJC |
| v. | ) | DEFENDANT'S MOTION |
| | ) | TO CONTINUE TRIAL OR TO |
| ALEJANDRO ENRIQUE | ) | ALTERNATIVELY STRIKE THE |
| RAMIREZ UMANA | ) | DEATH PENALTY |

NOW COMES Defendant ALEJANDRO UMANA, by and through undersigned counsel, and hereby moves this court to continue the trial of this matter to a later trial term or to alternatively strike the death penalty. This case is currently scheduled for trial before this Honorable Court on October 5, 2009. On June 11, 2009, the Defendant previously filed a motion to continue the trial of this matter. This court denied that motion by order dated June 29, 2009. Since that time, there have been developments in Defendant's case which further merit the continuance of the trial date in this case. Defendant sets forth the following to support his request for a continuance of the trial in this case.

## EX PARTE SHOWING

Defendant wishes to disclose and show to the Court several matters that are issues and problems for the Defendant in the preparation of his case. However, in an effort not to reveal trial strategy or to expose work product, Defendant will make an ex parte showing regarding certain aspects of the preparations of his defense. Defendant is filing contemporaneously with this motion a separate pleading under seal containing his ex parte justifications for a continuance of this matter. This separate ex parte pleading provides facts and details of the circumstances which are the most compelling reasons requiring continuance of this trial.

## NEW TRANSLATIONS

In late June, the Government delivered to Defendant additional discovery; approximately 4,000 documents consisting of correspondence Defendant has written while incarcerated and correspondence of his co-defendants. Much of this correspondence was exchanged between and amongst the various co-defendants. In late July, the Government produced another discovery disk with a similar amount of writings. The Government produced yet another disk with even more such writings although the number is lesser on July 27, 2009. Most of these documents are in Spanish. Some of the documents appear to contain passages that are written in code. These documents have now become critical as the Government has just filed its notice under Rules 702, 703 and 705 of its intent to introduce expert testimony. The Government has specifically given notice that it intends to offer the testimony of an expert in "cryptanalysis." The Government's notice specifically states that the expert testimony will relate to "multiple writings seized during the investigation and the decryption of suspected codes, ciphers, and concealment therein."

Defendant has delivered these new discovery items to the same vendor that had been approved by this court for translation of the original audio and video recordings received in discovery. While Defendant is still awaiting a formal proposal from the vendor, defense counsel has had conversations with the vendor, who has advised that there will be approximately 8,000 documents to be translated. Defense Counsel has been informed that it would be unlikely that these translations could be completed by October. Additionally, Defendant may now be required to retain his own expert in "cryptanalysis." Defendant would need additional time to locate and employ such an expert thus providing further need for a continuance of the trial.

# THE AVERAGE FEDERAL CAPITAL CASE

Defendant respectfully requests the court consider the amount of time it is allowing defense counsel in the instant case to prepare for trial in comparison with what is the average amount of time that other federal capital counsel are allowed to prepare for trial. Defendant has attached the Declaration of Kevin McNally (Exhibit A) stating that the average time between indictment and the trial date in a federal capital case is 26.9 months. Defendant's case is on a much faster track than is the norm. Defendant was indicted on June 23, 2008. Accordingly, if Defendant is required him to proceed to trial on October 5, 2009, he will do so in just slightly more than 15 months from the date of his indictment. Proceeding to trial in October 2009 will force Defendant to trial almost a year earlier that the average federal capital case. Yet this case is far from average. In fact, it is an extremely complex case and voluminous in terms of discovery and scope.

The discovery in this case is massive, consisting of over 40,000 pages of police reports and statements and approximately 300 hours of audio recordings of conversations in Spanish. While Defendant's attorneys have received most of the English translations of these recordings, they have received just a few of the Government versions of these translations. Comparison of the two versions reveal that the Government translations are strikingly different and substantially more inculpatory than the translations that Defendant had received from his translator. Yet there are many more Government translations Defendant has yet to receive.

The scope of this case is also vast. As Defendant noted in his first Motion to Continue:

> The government also alleges in its Notice of Intention to Seek the Death Penalty that its evidence of additional uncharged acts of violence is not limited to the Los Angeles murders. In fact, the discovery includes evidence of other violent acts allegedly committed by Defendant in Los Angeles. Additionally, the government has informed Defendant's attorneys (and provided some discovery) of other alleged violent conduct, including a murder, allegedly committed by Defendant in El Salvador before he came to

the United States. However, in response to Defendant's Motion for a Bill of Particulars (Document #486) seeking, *inter alia,* the time, date, and location of other serious acts of violence referred to by the government in its Notice of Intention to Seek the Death Penalty, the government filed its Consolidated Response to the Motions of Defendant (Document #503). In that response, the government strongly opposed the motion for a bill of particulars, thereby declining to provide any limitation on the additional uncharged acts of violence that may be the subject of government evidence during the sentencing phase. On May 12, 2009, the Magistrate Judge issued an Order (Document #5 10) denying Defendant's Motion for a Bill of Particulars as to these allegations.

Thus, there is no limit on the possible scope of evidence of uncharged violent conduct to be presented by the government as aggravation during the sentencing phase. As a result, Defendant's attorneys must investigate and prepare to contest all uncharged violent conduct in Los Angles, El Salvador, and elsewhere. These tasks must be completed if Defendant's attorneys are going to be able to provide Defendant with effective assistance of counsel during both the guilt-innocence and the sentencing phases of trial.

The date which defense counsel has requested this case be continued is still less than the average amount of time that trial counsel receive in other federal capital cases. Certainly Defendant's request for continuance, when viewed in light of other federal capital cases, would appear to be extremely reasonable.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The Sixth Amendment entitles a criminal defendant to more than mere legal representation; an accused has the right to the effective assistance of competent counsel. Powell v. Alabama, 287 U.S. 45, 58, (1932). In order to fulfill that Constitutional guarantee and render effective assistance of counsel, counsel must be given adequate time to prepare for a case. See Powell, 287 U.S. at 71 (inadequate case preparation can jeopardize an accused's right to effective assistance of counsel). While "the Constitution nowhere specifies any period which must intervene between the required appointment of counsel and trial, the denial of adequate time for appointed counsel to confer, to consult with the accused and to prepare his defense, could convert the appointment of counsel into a sham and nothing more than a formal compliance with the constitution's requirement that an accused be given the assistance of

counsel." Avery v. Alabama, 308 U.S. 444, 446 (1940). "The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense." Powell, 287 U.S. at 59. Obtaining adequate time to properly prepare for representing a person facing death is essential.

Defense counsel face difficult and time-consuming tasks in capital cases, especially in light of the fact that they operate without the resources available to the government. When a person's life is at stake counsel are required to exhaustively explore every factual and legal aspect of the "defendant's character or record any of the circumstances of the offense that the defendant [may] proffer[] as a basis for a sentence less than death. Lockett v. Ohio, 438 U.S. 586, 604 (1978). In effect, counsel are preparing for two trials. See Williams v. Taylor, 529 U.S. 362, 396 (2000)(capital trial counsel provided constitutionally deficient representation where they "did not fulfill their obligation to conduct a thorough investigation of the defendant's background") (citing 1 ABA Standards for Criminal Justice 4-4.1, commentary, p. 4-55 (2d. ed. 1980.) Moreover, a capital trial is different from all other cases, not just by degree, but in kind.

The American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases (Rev. ed. 2003) ("ABA Guidelines") codify the expectations of the profession concerning the obligations of counsel in capital cases. Of particular note, Guideline 10.7 states the following:

> Counsel at every stage have an obligation to conduct thorough and independent investigations relating to the issues of both guilt and penalty.
>
> 1. The investigation regarding guild should be conducted regardless of any admission or statement by the client concerning the facts of the alleged crime, or overwhelming evidence of guilt, or any statement by the client that evidence bearing upon guilt is not to be collected or presented.

>    2.   The investigation regarding penalty should be conducted regardless of any statement by the client that evidence bearing upon penalty is not to be collected or presented.

ABA Guidelines, 31 Hofstra L. Rev. 913, 1015 (2003).

The Supreme Court has also been clear about the duties of capital case counsel to conduct a thorough investigation.  <u>See</u>, <u>e.g</u>., <u>Williams</u>, supra; <u>Wiggins v. Smith</u>, 539 U.S. 510, 524-25 (2003) (counsel's failure to fully investigate Wiggins' background and present mitigating evidence of his unfortunate 'excruciating life history' violated his Sixth Amendment right to counsel) (citing ABA Guidelines).

Here, counsel have been diligent in attempting to fulfill their responsibilities as outlined by the ABA Standards and Guidelines "to which [the Supreme Court] long [has] refereed to as 'guides to determining what is reasonable.'" <u>Wiggins v. Smith</u>, 539 U.S. at 524.  The Guidelines upgrade the minimum standard from "quality" legal representation to "high quality" legal representation.  See American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, 31 Hofstra L. Rev. 913, 939 (2003) (outlining the 2003 revisions to the Guidelines).  Included in the Guidelines is the requirement that the capital defendant "receive the assistance of all expert, investigative, and other ancillary professional services… appropriate… at all stages of the proceedings." Id. at 952. Cf. 18 U.S.C. §§ 3005 and 3599.

Capital cases are fundamentally different than any other criminal case, not only in the severity of the potential penalty but in the nature of the evidence and information which must be developed.  Sensitive historical facts concerning the defendant and his family need to be disclosed to members of the defense team who are essentially strangers to the defendant.  It takes time to develop the trust necessary to learn vital information, and what is learned in the initial

investigation may create a mandatory duty to investigate further. Wiggins, 539 U.S. at 525; Douglas v. Woodford, 316 F.3d1079, 1088-89 (9th cir. 2003). This takes months or, in some cases, years. Then evaluation by relevant experts must follow. See Wallace v. Stewart, 184 F.3d 1112, 1117-18, (9th Cir. 1999); Bean v. Calderon, 163 F.3d 1073, 1080-81 (9th Cir. 1998), cert. denied, 528 U.S. 922 (1999) (presentation of medical experts without preparation and foundation prejudicial at penalty phase).

Defense counsel are experienced in the trial of capital cases. Together they have tried a total of 13 capital cases in the state courts of North Carolina. It is from this experience and based on the above stated facts and those set forth in the accompanying *ex parte* pleading, that defense counsel submits that his attorneys cannot complete their pretrial investigation and trial preparation before October 5. Defense counsel would note that their most compelling reasons for continuance are set forth in the *ex parte* portion of this motion. If Defense counsel are not allowed the time to resolve the issues and complete their investigation as set forth in the *ex parte* portion of this motion they will fail to fulfill their constitutional responsibilities to their client as set forth by the United States Supreme Court. Wiggins v. Smith, supra.

Therefore, due to counsel's lack of preparation, if trial is held during the currently scheduled trial term, undersigned counsel will be unable to provide Defendant with effective assistance of counsel. Accordingly, pursuant to 18 U.S.C. §3161(h)(8)(B)(iv), Defendant submits that a denial of this continuance motion would deny Defendant and his counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

Undersigned counsel submit that, working diligently as possible, they would be able to provide effective assistance of counsel to Defendant at trial and sentencing no earlier than April, 2010. In the event the court does not allow defendant's motion to continue in order to

allow him effective assistance of counsel defendant asks the court to strike the death penalty as a potential punishment as the only alternative to protect defendant's constitutional rights

Based on the foregoing, Defendant respectfully requests this Honorable Court to continue the trial of this matter from the October 5 trial term to a trial term no earlier than April, 2010 or in the alternative to strike the death penalty as a potential punishment.

Respectfully submitted this the 19th day of August 2009.

/s/ Mark P. Foster, Jr.
Mark P. Foster, Jr. (NC State Bar No. 22717)
Attorney for Defendant
Suite 126, 101 N. McDowell Street
Charlotte, NC 28204-2261
Telephone: (704) 347-1809
Facsimile: (704) 347-0292
E-mail: mpfosterjr.@bellsouth.net


/s/ John D. Bryson
John D. Bryson (NC State Bar No. 12883)
Attorney for Defendant
P. O. Drawer 2086
High Point, NC 27261-2086
Direct Telephone: (336) 819-6016
Direct Facsimile: (336) 819-6076
E-mail: jbryson@wehwlaw.com

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above Defendant's Renewed Motion to Continue Trial has been duly served on the attorneys listed below by e-mail service through ECF on this 19th day of August, 2009 as follows:

Jill Rose
Jill.Rose@usdoj.gov

Sam Nazarro
Sam.Nazzaro@usdoj.gov

Kevin Zolot
Kevin.Zolot@usdoj.gov

Adam Morris
Adam.Morris@usdoj.gov

Mark Jones
Mark.Jones2@usdoj.gov

/s/ John D. Bryson
John D. Bryson (NC State Bar No. 12883)
Attorney for Defendant
P. O. Drawer 2086
High Point, NC  27261-2086
Direct Telephone:  (336) 819-6016
Direct Facsimile:  (336) 819-6076