IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:08CR134-RJC

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ALEJANDRO ENRIQUE RAMIREZ UMANA, | ) ) | |
|     a/k/a "Wizard" | ) | |
|         "Lobo" | ) | |
| | ) | |
| **Defendant.** | ) ) | |

**THIS MATTER** is before the Court on the defendant's objection to the admission of Exhibits 160, 161, 162, 163, 165, 166, 167, 168, 169, and 170, offered by the government as letters purportedly written by the defendant while in state custody.

The defendant is one of 26 co-defendants charged with multiple federal offenses arising principally out of their alleged affiliation with La Mara Salvatrucha, also known as the MS-13 gang (hereafter "MS-13"). The defendant's charges include RICO conspiracy, murder in aid of racketeering, Hobbs Act robbery and extortion, and witness tampering. The defendant's case has been severed, and his jury trial began on April 12, 2010.

On April 15, 2010, the government moved to introduce into evidence a number of letters confiscated from the Mecklenburg County Jail that purport to be written by the defendant to several of his alleged co-conspirators, or which purport to be written by other co-conspirators the author of which has been identified as the defendant. (Gov. Exhibits 160-63, 165-70). The defendant objected to these exhibits on grounds of authenticity, relevance, and undue prejudice. The Court held an evidentiary hearing outside the presence of the jury, receiving testimony from Mecklenburg County

1

Sheriff's Department Sergeant Scott Clarkson and administrative employee Denise Daniels, Jeffrey Taylor, a qualified expert in forensic handwriting analysis, and Detective Chuck Hastings of the Charlotte-Mecklenburg Police Department. After hearing the evidence and arguments of counsel, the Court announced its factual findings and legal conclusions, which are stated below.

I. FINDINGS OF FACT

The defendant was taken into custody on state-issued arrest warrants on January 12, 2008. He remained in state custody, at the Guilford County Jail, until he was taken into federal custody in June of 2008. Several of his alleged MS-13 co-conspirators were held at the Mecklenburg County Jail for several months. Each inmate taken into state custody receives a Prisoner Identification Number ("PID number"). On all outgoing mail, inmates are required to put their names, PID #s and jail return address. It is a policy of the jail that prison guards verify that inmates included their name, correct PID number and return address on their outgoing mail. Whether the policy was complied with concerning each letter here is in dispute.

At the direction of investigators, jail personnel flagged for inspection all ingoing and outgoing mail associated with MS-13 inmates. Any letter addressed to these inmates was first intercepted by Daniels, who before mailing the originals, made copies of the letters and delivered the copies to Clarkson, who in turn delivered them to Hastings. The copies were then sent to the FBI, for translation, and to Taylor, for handwriting analysis. Each letter was labeled with a "JMU" document number for internal reference.

Taylor was asked to perform a handwriting analysis of the letters in order to determine which, if any, had been written by the defendant. His analysis began on the premise that certain documents were known specimens of the defendant's handwriting. The first specimen, Exhibit 151 (JMU 2), is an envelope addressed to the El Salvadoran consulate bearing the defendant's name, PID number, and jail return address. It contains a several page letter, referencing the defendant as the

2

author, requesting consulate help in avoiding the death penalty for charges of being an MS-13 gang member and alleging discrimination because of that fact and his illegal status. The letter also references his family status and contains the same PID number that appears on the envelope. The second specimen, Exhibit 156 (JMU 66), is an envelope bearing the defendant's name, jail address, and PID number, addressed to his alleged co-conspirator Jaime Sandoval. It contains a handwritten multi-page letter identifying the author as "Wizard," a known alias of the defendant, and describes in detail psychological testing identical to the testing performed on the defendant in this case. It references known associates of the defendant and uses terminology others have associated with him. Finally, the third specimen, Exhibit 169 (JMU 22), is an envelope also addressed to Sandoval bearing the same information as Exhibit 156, containing a detailed analysis of the social importance of MS-13 and asking for the PID number of another known MS-13 member. Taylor credibly testified that he compared these specimens and determined they were of common authorship, except for the final two lines of Exhibit 169, which were written in a different handwriting style that Taylor could not analyze.

Taylor then compared the handwriting found in the known specimens to the handwriting found in the other confiscated letters (the "questioned documents"). For each of the questioned documents, he found a "strong probability" or a "virtual certainty" that they were authored by the defendant.[1] Where Taylor could not opine to a "certainty," it was only due to the fact that he analyzed a copy of the letter rather than the original.

II. DISCUSSION

    A. Authenticity

The defendant objects to the authenticity of all the letters on the ground that there is

---

[1] Taylor also found a "strong probability" that the defendant did not write certain of the confiscated letters. The government did not seek to introduce these letters into evidence.

insufficient evidence to establish the authenticity of the defendant's known handwriting specimens. Because no witness actually saw the defendant write the specimens, or testified that the general jail policy of comparing PID numbers to inmates upon receipt of outgoing mail is always followed, the defendant concludes that the government has not established that the "known" specimens were actually written by the defendant. Therefore, Taylor's handwriting analysis is fundamentally flawed as based on the faulty premise that the defendant's known specimens are authentic. The defendant argues that these questions of authenticity render the letters inadmissible into evidence. The Court disagrees.

Rule 901(a) of the Federal Rules of Evidence states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." To meet this threshold for admission into evidence, "the party seeking to introduce physical evidence must provide 'a basis for the jury to resolve the authenticity question in favor of' that party." United States v. Patterson, 277 F.3d 709, 713 (4th Cir. 2002) (quoting United States v. Capers, 61 F.3d 1100, 1106 (4th Cir.1995)). So long as this initial threshold is met, any deficiency in the reliability of the authentication goes to the weight of the evidence, not its admissibility. See Capers, 61 F.3d at 1106.

Here, there is evidence of a jail policy requiring an inmate to write his name, PID number, and jail address on each piece of correspondence before it can be mailed out. Although it could not be verified whether this policy was followed in every instance, many of the proposed exhibits contain such indicators. This is some evidence of authorship by the defendant. More importantly, the information contained in the letters is strong circumstantial evidence of their authenticity. The author of these letters shares intimate details—particularly regarding his psychological testing—that would only be known to the defendant. See Fed. R. Evid. 901, Advisory Committee's Note, Example 4 ("[A] document . . . may be shown to have emanated from a particular person by virtue

4

of its disclosing knowledge of facts known peculiarly to him."). There appears no reason another person within the jail would embark on such a prolific letter writing campaign under the defendant's name. Additionally, comments in these letters are consistent with verbal statements of the defendant as recorded and related by alleged co-conspirators.

Taylor testified that he concluded with high probability that there was a common authorship of the known specimens as well as the questioned documents offered into evidence. An expert need not testify with absolute certainty that writings are authentic to satisfy the threshold for admission under Rule 901. See United States v. McGlory, 968 F.2d 309, 329 (3rd Cir. 1992) (upholding the admission of handwritten notes, relying in part on an expert's inconclusive finding of "numerous similarities" between the questioned documents and the defendant's handwriting exemplar). This expert finding, combined with the jail policy, the address identifiers, and the information contained within each questioned document unique to the defendant all satisfy the Court that there is more than a sufficient basis for the jury to resolve this question of authenticity in favor of the government. Patterson, 277 F.3d at 713. The objections raised by the defendant therefore go to the weight of this evidence, not its admissibility.

    B.    Relevance and Undue Prejudice

In the alternative, the defendant objects to the letters under Rules 401 and 403 as irrelevant, or even if marginally relevant, unduly prejudicial. The defendant states that much of the letters is generic rambling, profanity, and evidence of bad character or bad acts not relevant to this case. He argues that these comments have no bearing on the case and pose a uniquely high danger of creating unfair prejudice.

This is a somewhat difficult inquiry because the letters discuss multiple topics, some of which are relevant, and some of which are not. A unifying theme, however, is the author's expression of loyalty to MS-13. Various statements made throughout the letters suggest a

5

consciousness of guilt of the offenses charged in this case. Moreover, both the content and the frequency of these communications suggest that MS-13 is an organized entity, and the author exercises some measure of control over its members. This aspect of the letters is highly relevant to the defendant's RICO conspiracy and murder in aid of racketeering charges, both of which allege the defendant's membership in a racketeering enterprise. As defendant's statements during and in furtherance of an on-going conspiracy, they amount to party admissions and co-conspirator statements and therefore are not hearsay. Fed. R. Evid. 801(d)(2)(A) and (E).

Against these findings of relevance, the letters must demonstrate a significant danger of unfair prejudice that substantially outweigh their probative value. After review, the Court finds especially troubling certain racially-charged statements written in Exhibits 167 and 169.[2] These comments are inflammatory and, critically, not probative to any issue in the defendant's case. Thus, the Court finds that the letters offered as Exhibits 167 and 169, though relevant, are sufficiently prejudicial to warrant exclusion under Rule 403. As for the remaining letters, they do not demonstrate a danger of unfair prejudice that substantially outweighs their probative value.

---

[2] Exhibit 167 contains a derogatory reference to African-Americans. Exhibit 169 contains a lengthy diatribe accusing the United States of subjugating Latin-Americans and predicting their violent uprising.

IV.     CONCLUSION

**IT IS, THEREFORE, ORDERED** that Exhibits 160, 161, 162, 163, 165, 166, 168, and 170 are admissible into evidence as the purported writings of the defendant. Exhibits 167 and 169 are inadmissible, however, because their probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, or misleading the jury.

Signed: April 18, 2010

Robert J. Conrad, Jr.
Chief United States District Judge