# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:08CR134-RJC

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.     )<br>)<br>ALEJANDRO ENRIQUE RAMIREZ )<br>UMANA,     )<br>    a/k/a "Wizard"     )<br>        "Lobo"     )<br>)<br>**Defendant.**     )<br>_____) | **ORDER** |

**THIS MATTER** is before the Court on the "Defendant's Motion to Restrict the Admission of Victim Impact Evidence" (Doc. No. 497) filed May 5, 2009; the government's Response (Doc. No. 504) filed May 8, 2009; and the defendant's "Motion to Strike the Non-Statutory Aggravating Factor Relating to Victim 'Friend' Impact Evidence" (Doc. No. 963) filed April 1, 2010. For the reasons stated below, the Court **DENIES** each of the defendant's motions.

I.   BACKGROUND

The defendant is charged in a Superseding Indictment with multiple federal offenses arising out of his alleged affiliation with La Mara Salvatrucha, also known as the MS-13 gang (hereafter "MS-13"). Count 1 of the Indictment charges the defendant with a RICO conspiracy, in violation of 18 U.S.C. § 1962(d). As an overt act in furtherance of this conspiracy, the Indictment alleges that on December 8, 2007, the defendant murdered two individuals, Ruben Garcia Salinas and Manuel Garcia Salinas, in a restaurant in Greensboro, North Carolina. These murders are also charged separately in Counts 22 and 24 of the Indictment as murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), and in Counts 23 and 25 as use of a firearm during and in relation to a crime

1

of violence resulting in death, in violation of 18 U.S.C. § 924(j). In the event the defendant is found guilty of Counts 22, 23, 24, or 25, the government has filed a Notice of Intention to Seek the Death Penalty (Doc. No. 275), as required by the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 et seq. In its Notice, the government lists several aggravating factors it contends justify a sentence of death, including the following allegation of victim impact:

> As demonstrated by the victim's personal characteristics as an individual human being and the impact of the death upon the victim and the victim's family and friends, the defendant caused injury, harm, and loss to the Ruben Garcia Salinas family and friends.

(Doc. No. 275 at 3).[1] The defendant moves to strike reference to "friends" from the government's Notice and exclude all subsequent victim impact evidence from friends of the victims. Moreover, the defendant seeks to further limit the government's victim impact evidence to one adult family member of each victim reading a prepared statement approved by the Court. The defendant also moves to have the Court admonish these witnesses that they will not be allowed to testify if they are unable to control their emotions, and that they may not give an opinion about the defendant, the crime, or the appropriate sentence.

II. LEGAL FRAMEWORK

The FDPA authorizes the government to offer victim impact evidence during the sentencing phase of a capital trial. 18 U.S.C. § 3593(a). Admission of such evidence does not violate the defendant's constitutional rights because "evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed." Payne v. Tennessee, 501 U.S. 808, 827 (1991). In this sense, it is no different

---

[1] Victim impact is also restated with respect to the other murder victim, Manuel Garcia Salinas. (Doc. No. 275 at 6).

from other types of relevant evidence. Id. Victim impact evidence is subject to exclusion under the defendant's right to due process only when it is so unduly prejudicial that its admission would render the defendant's trial fundamentally unfair. Id. at 825.

III. DISCUSSION

   A. Victim Impact Evidence Offered by Friends

The defendant moves to strike from the government's Notice and subsequently exclude victim impact evidence offered by friends of the alleged victims. In support, the defendant argues that by referring only to evidence of loss "suffered by the victim and the victim's family," 18 U.S.C. § 3593(a), the FDPA implies that friends of the victim may not offer victim impact evidence. Moreover, the defendant argues that allowing friends of a victim to offer victim impact evidence would raise "serious constitutional questions." (Doc. No. 963 at 3). To avoid this constitutional issue, the defendant reasons, the Court should construe the FDPA as allowing victim impact offered by family members only.

The defendant's preferred construction of § 3593(a) is based upon the legal principle of expressio unius est exclusio alterius, meaning "that the express designation of one thing may properly be construed to mean the exclusion of another." Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co., 510 F.3d 474, 483 (4th Cir. 2007) (quoting Volvo Trademark Aktiebolaget v. AIS Constr. Equip. Corp., 416 F. Supp. 2d 404, 411 (W.D.N.C. 2006)). Reading the provision in its entirety, however, renders this principle of construction inapplicable. Section 3593(a) is open-ended, allowing the government to give notice of "any other relevant information" that forms the basis for an aggravating circumstance. Given this "catch-all" provision, it would be unreasonable to conclude that by failing to explicitly mention friends of the victim, Congress intended to prohibit victim impact evidence offered by friends. See United States v. Barrett, 496 F.3d 1079, 1098-99 (10th Cir.

2007) (holding that the phrase "any other relevant information" in § 3593(a) "clearly suggests" that Congress intended to permit victim impact evidence from friends and colleagues).

Nor would allowing such evidence implicate the defendant's constitutional rights. As the United States Supreme Court articulated in Payne, victim impact evidence is designed to reveal the victim's "uniqueness as an individual human being," 501 U.S. at 823, "whose death represents a unique loss to society and in particular to his family." Id. at 825 (quoting Booth v. Maryland, 482 U.S. 496, 517 (White, J., dissenting)). Although Payne identifies the family as a particularly important source of victim impact evidence, it does not limit family as the exclusive source of such evidence. To the contrary, victim impact evidence offered by friends appropriately demonstrates the loss to society caused by the victim's death. See United States v. Runyon, 667 F. Supp. 2d 648, 650 (E.D.Va. 2009) (finding it "clear that the impact that the victim's murder had on his friends and shipmates falls within the ambit of appropriate [victim impact] evidence"); see also United States v. Williams, No. CR-05-920, 2008 WL 4644830, at *7 (C.D. Cal. Oct. 15, 2008) (unpublished) (denying a defendant's motion to exclude victim impact evidence offered by non-family members). Because it is authorized by the FDPA and consistent with his constitutional rights, the Court denies the defendant's motion to strike and exclude victim impact evidence offered by friends of the victims.

  B. Limitations on Victim Impact Evidence

The defendant next moves to limit the government's victim impact evidence to one witness per victim, reading a prepared statement approved by the Court. Moreover, the defendant asks the Court to admonish these witnesses prior to testifying to control their emotions and refrain from giving an opinion about the defendant, the crime, or the appropriate sentence. The defendant argues that without these restrictions, the victim impact evidence is likely to be so unduly prejudicial that

4

it would render his trial fundamentally unfair. Payne, 501 U.S. at 825.

Allowing only two victim impact witnesses and limiting their testimony to reading a prepared statement would unreasonably exceed the safeguards required by the defendant's right to due process. In United States v. Barnette, 211 F.3d 803 (4th Cir. 2000) (affirming in part, vacating in part, and remanding for re-sentencing on other grounds), the Fourth Circuit considered a defendant's due process challenge to victim impact testimony given by seven witnesses who "presented stories of the victims' childhoods, family experiences, and the trauma of their deaths, and poems reflecting their deep sadness and regret over their losses." Id. at 818. This testimony comprised roughly 22% of the government's evidence during the sentencing phase of the trial. Id. Noting that Payne supported an expansive presentation of loss caused by the victim's death, and that the defendant had offered comparable evidence in mitigation, the Fourth Circuit found no violation of due process. Id. at 818-19. Other courts have reached the same conclusion upon similar facts. See, e.g., United States v. Bolden, 545 F.3d 609, 625-26 (8th Cir. 2008) (upholding victim impact testimony from sixteen witnesses, comprising 80% of the government's penalty phase case-in-chief); Barett, 496 F.3d at 1098-99 (upholding the admission of victim impact testimony from several family and friends concerning the victim's life and the impact caused by his death). In fact, the Court is aware of no case where the victim impact evidence presented was so cumulative or inflammatory that it resulted in a violation of due process.

This precedent makes clear that whatever limit due process may place upon the quantity and scope of victim impact evidence, it does not require the prospective limits the defendant seeks. Accordingly, the Court denies the defendants motion to limit the government's victim impact evidence to prepared statements read by one adult family member of each victim.

Finally, with respect to the admonishments requested by the defendant, the Court finds no

need to issue them at this time. In its response, the government recognizes that victim impact testimony giving an opinion of the defendant, the crime, or the appropriate punishment would be improper, and the government will advise its witnesses against making such statements. (Doc. No. 504 at 6). And if the Court finds it necessary to instruct a witness to control his or her emotions, the proper time for such an instruction would be during the witness's testimony. A peremptory warning is not required although the Court is confident the government will advise its witnesses concerning the importance of controlling their emotions.

IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the "Defendant's Motion to Restrict the Admission of Victim Impact Evidence" (Doc. No. 497) and the defendant's "Motion to Strike the Non-Statutory Aggravating Factor Relating to Victim 'Friend' Impact Evidence" (Doc. No. 963) are **DENIED**.

Signed: April 19, 2010

Robert J. Conrad, Jr.
Chief United States District Judge