# IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## DOCKET NO. 3:08CR134-RJC

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | _____ **ORDER** |
| | ) | |
| **ALEJANDRO ENRIQUE RAMIREZ** | ) | |
| **UMANA,** | ) | |
| a/k/a "Wizard" | ) | |
| "Lobo" | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the "Defendant's Motion to Strike Non-statutory Aggravating Factor and to Exclude Evidence of Unadjudicated Criminal Acts During Penalty Phase of Trial" (Doc. No. 483) filed April 24, 2009; the "Defendant's Motion to Strike Non-Statutory Aggravating Factors from Notice of Intent to Seek the Death Penalty" (Doc. No. 488) filed April 24, 2009; the government's Consolidated Response (Doc. No. 503) filed May 8, 2009; the defendant's "Motion to Strike the Non-Statutory Aggravating Factor of Future Dangerousness from the Notice of Intent to Seek the Death Penalty" (Doc. No. 968) filed April 6, 2010; and the government's Response (Doc. No. 991) filed April 13, 2010. For the reasons stated below, the Court **GRANTS IN PART** and **DENIES IN PART** the defendant's motion to strike non-statutory aggravating factors (Doc. No. 488) and **DENIES** the defendant's remaining motions (Doc. Nos. 483&968).

## I.     BACKGROUND

The defendant is charged in a Superseding Indictment with multiple federal offenses arising out of his alleged affiliation with La Mara Salvatrucha, also known as the MS-13 gang (hereafter

1

"MS-13"). Count 1 of the Indictment charges the defendant with a RICO conspiracy, in violation of 18 U.S.C. § 1962(d). As an overt act in furtherance of this conspiracy, the Indictment alleges that on December 8, 2007, the defendant murdered two individuals, Ruben Garcia Salinas and Manuel Garcia Salinas, in a restaurant in Greensboro, North Carolina. These murders are also charged separately in Counts 22 and 24 of the Indictment as murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), and in Counts 23 and 25 as use of a firearm during and in relation to a crime of violence resulting in death, in violation of 18 U.S.C. § 924(j). In the event the defendant is found guilty of Counts 22, 23, 24, or 25, the government has filed a Notice of Intention to Seek the Death Penalty (Doc. No. 275), as required by the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 et seq. In its Notice, the government lists several aggravating factors it contends justify a sentence of death. Several of these are enumerated aggravating factors listed in § 3592(c) (the "statutory aggravating factors"). The government has also given notice of its intent to prove additional aggravating factors which are not enumerated in § 3592(c) (the "non-statutory aggravating factors"), including the following:

1.      Gang Motivated Killing.

The defendant killed Ruben Garcia Salinas to protect and maintain the name and reputation of the criminal enterprise MS-13, and to advance his position and reputation within the criminal enterprise.

\* \* \*

3.      Callous Disregard for the Severity of the Offense.

Defendant has demonstrated a callous disregard for the severity of the offense, as evidenced by his words and actions following the murder of Ruben Garcia Salinas.

4.      Participation in Additional Uncharged Murders and Other Acts of Violence.

Apart from the offenses charged in the First Superseding Bill of Indictment, defendant has been involved in other serious acts of violence, which are not reflected in his criminal record. Including but not limited to:

2

a.    On or about July 27, 2005, in Los Angeles, California, defendant knowingly, intentionally, and unlawfully killed Jose Herrera and Gustavo Porras.

b.    On or about September 28, 2005, in Los Angeles, California, defendant knowingly, intentionally, and unlawfully participated and aided and abetted the killing of Andy Abarca.

5.    Future Dangerousness.

Defendant is likely to commit criminal acts of violence in the future which would constitute a continuing and serious threat to the lives and safety of others, as evidenced by at least one or more of the following:

a.    Continuing Pattern of Violence.

Defendant has engaged in a continuing pattern of violence, attempted violence, and threatened violence, including but not limited to the crimes alleged against defendant in the First Superseding Bill of Indictment.

b.    Low Rehabilitative Potential.

Defendant poses a future danger to the lives and safety of other persons as demonstrated by his lack of rehabilitation after prior incarceration, his pattern of criminal conduct, and, his allegiance to and membership in MS-13.

c.    Lack of Remorse.

Defendant has never expressed any remorse for killing Rubin Garcia Salinas as indicated by defendant's statements to fellow gang-members during the course of and following the offenses alleged in the First Superseding Bill of Indictment.

d.    Gang Membership.

Defendant has demonstrated an allegiance to and active membership in MS-13, a violent criminal enterprise.

(Doc. No. 275 at 4-5).[1] On April 24, 2009, the defendant filed two motions to strike non-statutory aggravating factors from the government's Notice. (Doc. Nos. 483 & 488). Therein the defendant moves to strike all his non-statutory aggravating factors as unauthorized by the FDPA. The

---

[1] Each aggravating factor is also re-alleged with respect to the other murder victim, Manuel Garcia Salinas. (Doc. No. 275 at 5-8).

defendant also moves to strike on various other grounds the aggravating factors Uncharged Murders and Other Violent Conduct, Gang Motivated Killing, and Callous Disregard for the Severity of the Offense. Later, on April 6, 2010, the defendant filed a third motion to strike the non-statutory aggravating factor Future Dangerousness. (Doc. No. 968).

II.     LEGAL FRAMEWORK

A.     Capital Sentencing

The FDPA directs that sentencing in a federal capital case be performed in two discrete phases. The first phase, "eligibility," requires the jury to determine whether the defendant qualifies for the death penalty, while the second phase, "selection," requires a decision as to whether a particular defendant "should in fact receive that sentence." Tuilaepa v. California, 512 U.S. 967, 972 (1994). Both the eligibility and selection phases are conducted in a special sentencing hearing mandated by the FDPA. 18 U.S.C. § 3593(b). At this hearing, "information may be presented as to any matter relevant to the sentence, . . . regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c). However, the process must be "neutral and principled so as to guard against bias or caprice in the sentencing decision." Tuilaepa, 512 U.S. at 973 (citing Gregg v. Georgia, 428 U.S. 153, 189 (1976)).

To be eligible for the death penalty in a homicide case, the jury first must find that the defendant acted intentionally in killing another person. 18 U.S.C. § 3591(a)(2). Next, it must find beyond a reasonable doubt the presence of at least one statutory aggravating factor alleged in the government's Notice. 18 U.S.C. 3593(e)(2). If these findings are made, the defendant is eligible for the death penalty, and the jury proceeds to the selection phase. During this phase, the jury may

consider the presence of any statutory or non-statutory aggravating factor for which the government has given notice. 18 U.S.C. § 3592(c). Each juror then weighs aggravating factors, found unanimously beyond a reasonable doubt, against mitigating factors, found by that juror by a preponderance of evidence. 18 U.S.C. § 3593(d). The jury may recommend the death penalty if it unanimously concludes that "all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist . . . , or, in the absence of a mitigating factor, . . . the aggravating factor or factors alone are sufficient to justify a sentence of death." 18 U.S.C. § 3593(e).

B.     Constitutional Protections

The Fifth, Sixth, and Eighth Amendments of the Constitution require that a capital sentencing scheme " 'suitably direct[ ] and limit[ ]' " a sentencing jury's discretion " 'so as to minimize the risk of wholly arbitrary and capricious action.' " Lewis v. Jeffers, 497 U.S. 764, 774 (1990) (quoting Gregg v. Georgia, 428 U.S. 153, 189 (1976)). Pursuant to these protections, the Court will not permit the jury to consider aggravating factors that are impermissibly vague, overbroad, or otherwise fail to " 'genuinely narrow the class of persons eligible for the death penalty.' " Arave v. Creech, 507 U.S. 463, 474 (1993) (quoting Zant v. Stephens, 462 U.S. 862, 877 (1983)); accord Maynard v. Cartwright, 486 U.S. 356, 364 (1988) (invalidating an aggravating factor that "an ordinary person could honestly believe" applied to every eligible defendant). In sum, the Court must ensure that aggravating factors put before a sentencing jury permit it "to make a principled distinction between those who deserve the death penalty and those who do not." Jeffers, 497 U.S. at 776.

III.   DISCUSSION

A.     FDPA Authorization of Non-Statutory Aggravating Factors

At the outset, the defendant challenges the government's right to present evidence[2] of any non-statutory aggravating factor during the selection phase of his sentencing. Section 3591(a) of the FDPA directs the jury to "consider[ ] . . . the factors set forth in section 3592" when deciding whether to impose the death penalty. The defendant argues that because § 3591(a) references only the factors "set forth" in § 3592, it authorizes the jury to consider only the statutory aggravating factors explicitly listed in that section. Thus, the FDPA is vague as to whether non-statutory aggravating factors are ever proper to consider. In light of this vagueness, the defendant argues that the rule of lenity[3] should compel the Court to construe the FDPA to limit the government's Notice and subsequent proof to the statutory aggravating factors enumerated in § 3592(c)(1)-(16).

The defendant's argument fails because the FDPA is not vague in this regard. Section 3592(c) contains an explicit "catch-all" provision authorizing the jury to consider "any other aggravating factor for which notice has been given . . . ." Moreover, section 3593(d) contains identical language instructing the jury to consider the presence of both statutory aggravating factors "and any other aggravating factor for which notice has been provided," i.e., any non-statutory aggravating factor alleged in the government's Notice. Reading the FDPA as a whole, it is clear that the "set forth" language in § 3591(a) authorizes the consideration of both statutory and non-statutory aggravating factors. Moreover, any contrary construction of the FDPA would render several of its other provisions essentially meaningless. To the extent possible, a statute should be read so that no

---

[2] The FDPA conspicuously uses the term "information" rather that "evidence," perhaps because the Federal Rules of Evidence are explicitly rendered inapplicable to capital sentencing proceedings. 18 U.S.C. § 3593(c). However, because the parties have often used the term "evidence" in their briefing of these issues, the Court will use that term throughout this Order.

[3] The rule of lenity requires a court to resolve any ambiguity in a criminal statute in favor of the defendant. United States v. Munn, 595 F.3d 183, 194 (4th Cir. 2010) (citing United States v. Santos, 553 U.S. 507, 128 S. Ct. 2020, 2025 (2008)).

part is rendered superfluous or inoperable. <u>Shipbuilders Council of America v. U.S. Coast Guard</u>, 578 F.3d 234, 244 (4th Cir. 2009); <u>Zheng v. Holder</u>, 562 F.3d 647, 654 (4th Cir. 2009). Other courts have considered the arguments raised by the defendant and reached the same conclusion. <u>See</u> <u>United States v. Le</u>, 327 F. Supp. 2d 601, 614 (E.D.Va. 2004); <u>United States v. Nguyen</u>, 928 F. Supp. 1525, 1536 (D. Kan. 1996). Thus, the Court finds that the FDPA generally authorizes a jury to consider any non-statutory aggravating factor for which notice has been provided.

B.    Uncharged Murders and Other Violent Conduct

The defendant lodges several objections to the non-statutory aggravating factor "Uncharged Murders and Other Violent Conduct," which alleges the defendant's participation in additional uncharged murders and other acts of violence. First, the defendant makes a constitutional challenge under the Fifth, Sixth, and Eighth Amendments to the use of uncharged criminal conduct as an aggravating factor. Next, the defendant argues that because the FDPA includes certain types of prior convictions as statutory aggravating factors, Congress intended to exclude unadjudicated criminal conduct from consideration. Finally, as an additional ground to his motion to strike, the defendant claims evidence of uncharged acts should be excluded from his sentencing hearing because the probative value of such evidence is outweighed by its likelihood to confuse or mislead the jury.

1.    Constitutionality

In support of his constitutional challenge under the Fifth, Sixth, and Eighth Amendments, the defendant makes two separate arguments: (1) that it is unconstitutional to try uncharged conduct under the relaxed evidentiary standard mandated by the FDPA; and (2) having already convicted the defendant of capital offenses, the jury will be unable to remain impartial when determining whether he committed the uncharged conduct.

Despite these concerns, the established law in the Fourth Circuit is that non-statutory

aggravating factors alleging uncharged criminal conduct do not violate the Constitution so long as the jury is properly instructed that it must find such conduct unanimously and beyond a reasonable doubt. See United States v. Higgs, 353 F.3d 281, 323 (4th Cir. 2003); see also United States v. Cisneros, 363 F. Supp. 2d 827, 838-39 (E.D.Va. 2005) (citing Higgs, denying a motion to strike aggravating factors alleging uncharged criminal conduct); United States v. Beckford, 964 F. Supp. 993, 1002-03 (E.D.Va. 1997) (holding that due process does not require a defendant's sentencing hearing to be governed by the Federal Rules of Evidence, even when allegations of unadjudicated conduct are present).

Here, the defendant is alleged to have committed, or aided and abetted in the commission of, uncharged acts of violence including participation in the murder of several individuals. Critically, the government's allegations attribute these crimes to the defendant himself, not MS-13. Cf. United States v. Rivera, 405 F. Supp. 2d 662, 670-71 (E.D.Va. 2005); United States v. Grande, 353 F. Supp. 2d 623, 638 (E.D.Va. 2005) (related cases, both striking non-statutory aggravating factors attempting to impute to the defendants acts of violence committed by their affiliated gang). Thus, the government's non-statutory aggravating factor alleging uncharged criminal conduct does not violate the defendant's Fifth, Sixth, and Eighth Amendment rights.

### 2. FDPA Authorization

Next, the defendant argues that in enacting statutory aggravating factors related to six categories of prior conviction,[4] Congress intended for the FDPA to exclude all uncharged criminal conduct from the jury's consideration. This proposition is based upon the maxim of statutory

---

[4] See 18 U.S.C. § 3592(c)(2) (violent felony involving firearm); (c)(3) (offense for which death or life imprisonment was authorized); (c)(4) (two violent felony offenses); (c)(10) (two felony drug offenses); (c)(12) (serious federal drug offense); (c)(15) (sexual assault or child molestation).

construction <u>expressio unius est exclusio alterius</u>, meaning "that the express designation of one thing may properly be construed to mean the exclusion of another." <u>Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.</u>, 510 F.3d 474, 483 (4th Cir. 2007) (quoting <u>Volvo Trademark Aktiebolaget v. AIS Constr. Equip. Corp.</u>, 416 F. Supp. 2d 404, 411 (W.D.N.C. 2006)). "The maxim requires great caution in its application, and in all cases is applicable only under certain conditions." STATUTES AND STATUTORY CONSTRUCTION § 47:25 (Norman J. Singer & J.D. Shambie Singer eds., 7th ed. 2007) (quotations omitted). One such limitation of the maxim is that it should not be applied if it creates "contradiction" within a statute. <u>Id.</u>; <u>see also</u> <u>U. S. Dept. of Labor v. Bethlehem Mines Corp.</u>, 669 F.2d 187, 197 (4th Cir. 1982) ("The maxim is to be applied with great caution and is recognized as unreliable.").

Here, the defendant's preferred construction of the FDPA would contradict a number of its provisions. Section 3592(c) itself specifically allows the sentencing jury to consider not only statutory aggravating factors but "any other aggravating factor for which notice has been given." Similarly, the jury is instructed to return findings for any statutory aggravating factor "and any other aggravating factor for which notice has been provided . . . ." 18 U.S.C. § 3593(d). These open-ended provisions would be thwarted by applying a literal interpretation to the categories of prior conviction enumerated as statutory aggravating factors. Noting this, the Fourth Circuit has rejected the defendant's line of reasoning. <u>See</u> <u>Higgs</u>, 353 F.3d at 322-23. Thus, the Court concludes that by listing six categories of prior conviction as statutory aggravating factors, Congress did not intend for the FDPA to preclude allegations of uncharged criminal conduct in non-statutory aggravating factors.

### 3. Admissibility of Evidence

Finally, the defendant argues that any evidence of uncharged violent acts is inadmissible at

his sentencing hearing under 18 U.S.C. § 3593(c), which directs the Court to exclude evidence "if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." The defendant claims that because the Federal Rules of Evidence are inapplicable to a capital sentencing hearing, any evidence of uncharged criminal acts admitted at his sentencing hearing would lack sufficient indicia of reliability. The defendant concludes that complete exclusion is necessary under § 3593(c) because the probative value of such evidence would be limited, while the risk of unfair prejudice, confusion of the issues, and misleading the jury would be high.

Although the Federal Rules of Evidence do not apply, "the FDPA provides a capital defendant with constitutionally sufficient evidentiary protection." United States v. Fulks, 454 F.3d 410, 438 (4th Cir. 2006); accord United States v. Lee, 374 F.3d 637, 648 (8th Cir. 2004); United States v. Fell, 360 F.3d 135, 145-46 (2d Cir. 2004) (reaching the same conclusion). Thus, the mere fact that the Rules are inapplicable is no reason to categorically exclude evidence. Without ruling on any specific evidence the government might seek to admit at the defendant's sentencing hearing, the Court declines to hold that all evidence of uncharged acts of violence is per se inadmissible. The Court therefore denies the defendant's motion to strike the non-statutory aggravating factor Participation in Additional Uncharged Murders and Other Acts of Violence.

In this manner, the Court defers making an admissibility determination of specific evidence of unadjudicated criminal conduct until after its review of said evidence. Should the defendant's trial proceed to the penalty phase, the Court will bifurcate eligibility and selection phases into two discrete proceedings. Both the government and the defendant have argued to the Court whether the Confrontation Clause and Crawford v. Washington, 541 U.S. 36 (2000), should apply to the selection phase of the defendant's sentencing hearing. If Crawford does apply, its prohibition against

10

the admission of testimonial statements from unavailable witnesses not subject to a prior opportunity for cross-examination would operate to bar certain statements proffered by the government as evidence of the defendant's unadjudicated criminal acts.

Although the Fourth Circuit has noted pre-Crawford that "it is far from clear that the Confrontation Clause applies to a capital sentencing proceeding," Higgs, 353 F.3d at 324, the applicability of Crawford to a capital sentencing proceeding is unsettled in this jurisdiction. See United States v. Jordan, 357 F. Supp. 2d 889, 901 (E.D.Va. 2005) (noting that Higgs is "of limited value in a post-Crawford analysis"). Absent guidance from the Supreme Court or the Fourth Circuit, the district courts are left to determine this issue. After review, the Court agrees with the districts courts in this jurisdiction that have determined Crawford only applies to the eligibility phase of capital sentencing proceedings. See United States v. Bodkins, No. 4:04cr70083, 2005 WL 1118158, at *4-5 (W.D.Va. May 11, 2005); Jordan, 357 F. Supp. 2d at 903-04. Thus, testimonial hearsay evidence offered during the eligibility phase would have to meet the requirements of Crawford before it could be presented to the jury. Crawford would not, however, operate to bar similar hearsay testimony offered during the selection phase.

Nevertheless, regardless of Crawford, courts recognize that heightened reliability concerns related to capital sentencing require a threshold determination that evidence of unadjudicated conduct is reliable prior to its admission. See Jordan, 357 F. Supp. 2d at 904; United States v. Cisneros, 363 F. Supp. 2d 827, 838-39 (E.D. Va. 2005); United States v. Breeden, No. 3:03cr13, 2004 WL 1920981, at *4 (W.D.Va. Aug. 27, 2004); United States v. Foster, No. CRIM. CCB-02-410, 2004 WL 903921, at *1 (D.Md. Apr. 9, 2004); Beckford, 964 F. Supp. at 1000. Therefore, should the defendant's trial proceed to the penalty phase, the government shall present to the Court and to the defendant information it intends to introduce as unadjudicated conduct for a determination

of reliability. Only if the government satisfies that threshold determination will such evidence be presented to the jury. See Beckford, 964 F. Supp. at 1000.

C.     Future Dangerousness

The defendant moves to strike the non-statutory aggravating factor "Future Dangerousness" in its entirety on the grounds that any inquiry into his future dangerousness is unreliable within the meaning of the Eighth Amendment, and that by alleging that the defendant "is likely" to commit criminal acts of violence in the future, the government improperly suggests its burden of proof is less than proof beyond a reasonable doubt.

1.     Constitutionality of Future Dangerousness

It has long been held that a sentencing court may evaluate and consider a defendant's propensity to commit acts of violence in the future as an aggravating factor weighing in favor of the death penalty. See Jurek v. Texas, 428 U.S. 262, 274-76 (1976). In Jurek, the Supreme Court noted that:

> It is, of course, not easy to predict future behavior. The fact that such a determination is difficult, however, does not mean that it cannot be made. Indeed, prediction of future criminal conduct is an essential element in many of the decisions rendered throughout our criminal justice system. The decision whether to admit a defendant to bail, for instance, must often turn on a judge's prediction of the defendant's future conduct. And any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose. For those sentenced to prison, these same predictions must be made by parole authorities. The task that a [capital sentencing jury] jury must perform in answering the . . . question [of future dangerousness] is thus basically no different from the task performed countless times each day throughout the American system of criminal justice. What is essential is that the jury have before it all possible relevant information about the individual defendant whose fate it must determine.

Id. at 274-75. See also Simmons v. South Carolina, 512 U.S. 154, 162 (1994) (reaffirming the central holding of Jurek).

In addition to lay testimony, the government may also offer expert opinion testimony

concerning the defendant's future dangerousness. See Barefoot v. Estelle, 463 U.S. 880, 897-99 (1983), superseded in part by statute, Pub. L. No. 104-132, § 102 (1996) (28 U.S.C. § 2253(c)), as recognized in Slack v. McDaniel, 529 U.S. 473, 480-81 (2000). In Estelle, the petitioner argued that scientific experts were categorically unable to render predictions about a defendant's future dangerousness with any degree of reliability. 463 U.S. at 896. Although the Court recognized a disagreement among penological experts about the accuracy of these predictions, it was "not persuaded that such testimony is almost entirely unreliable and that the factfinder and the adversary system will not be competent to uncover, recognize, and take due account of its shortcomings." Id. at 899. Applying these precedents, the Fourth Circuit has consistently upheld consideration of future dangerousness as an aggravating factor. E.g., Eaton v. Angelone, 139 F.3d 990, 998 (4th Cir. 1998); Bunch v. Thompson, 949 F.2d 1354, 3367-68 (4th Cir. 1991); Woomer v. Aiken, 856 F.2d 677, 680 (4th Cir. 1988) (all denying habeas relief, upholding state capital sentencing schemes that consider a defendant's future dangerousness).

In citing to studies that suggest predictions of future dangerousness are often wrong, or that subsequent advancements in federal corrections facilities have reduced prisoner violence, the defendant argues that the Court should conclude that Jurek and Barefoot are no longer controlling law. These are not legitimate grounds for a district court to question the continuing validity of otherwise mandatory precedent. Moreover, few of the reliability concerns raised by the defendant in the instant motion are new considerations. In Barefoot, the Supreme Court explicitly recognized that some studies indicated that predictions of future dangerousness were often wrong. 463 U.S. at 899 n. 7. However, this did not render consideration of future dangerousness unconstitutional, because "[a]ll of these professional doubts about the usefulness of psychiatric predictions can be called to the attention of the jury." Id. Thus, the Court denies the defendant's motion to strike Future

Dangerousness on the ground that it is unreliable within the meaning of the Eighth Amendment.[5]

### 2. "Is Likely" Phrasing

The defendant next argues that by alleging that he "is likely" to commit acts of violence in the future, the factor improperly suggests that the government's burden of proof is less than is required by due process and the FDPA. This argument is plainly without merit. The term "is likely" is necessary phrasing because, of course, one cannot predict future events with absolute certainty. The government still retains its required burden of proof, i.e., it must prove beyond a reasonable doubt that the defendant poses a danger to the lives and safety of others. It is no surprise, then, that the Fourth Circuit has noted that "[f]uture dangerousness is best defined as evidence that a defendant is 'likely to commit criminal acts of violence in the future that would be a threat to the lives and safety of others.' " United States v. Basham, 561 F.3d 302, 331 (4th Cir. 2009) (quoting United States v. Bernard, 299 F.3d 467, 482 (5th Cir.2002)). Thus, the government's phrasing of this aggravating factor does not imply a lesser burden of proof than the defendant's right to due process requires.

### 3. Sub-factors

As an alternative to striking the factor in its entirety, the defendant challenges the government's allegation of four specific sub-factors supporting a finding of future dangerousness: (1) "Continuing Pattern of Violence"; (2) "Low Rehabilitative Potential"; (3) "Lack of Remorse"; and (4) "Gang Membership." (Doc. No. 275 at 4-5). The defendant first argues that alleging specific sub-factors under the heading Future Dangerousness will mislead the jury. The defendant also

---

[5] For the same reasons, the Court denies the defendant's motion for an order requiring the government to produce empirical evidence establishing the reliability of the sub-factors Low Rehabilitative Potential and Lack of Remorse as a condition to presenting evidence of these sub-factors.

argues that an allegation of his low rehabilitative potential is irrelevant where the defendant's only alternative to the death penalty is life in prison without the possibility of parole,[6] and that his lack of remorse is alleged in such a way that violates his Fifth Amendment right to silence.

As an initial matter, the government may allege specific sub-factors under Future Dangerousness without misleading the jury from its core inquiry of whether the defendant is likely to commit acts of violence in the future. To the contrary, these sub-factors clarify the factor's "common-sense core of meaning," <u>Jurek</u>, 428 U.S. at 279 (White, J., concurring in judgment), and focus the jury on the government's proffered evidence. For this reason, Future Dangerousness is often alleged with multiple sub-factors, including Low Rehabilitative Potential and Lack of Remorse. <u>See</u> <u>United States v. Bin Laden</u>, 126 F. Supp. 2d 290, 303-04 (S.D.N.Y. 2001) (collecting cases). Moreover, because these sub-factors are alleged as evidence—not elements—of future dangerousness, the jury need not separately find the presence of all four sub-factors to find the presence of future dangerousness. Thus, the government may generally allege specific sub-factors in support of an allegation of the defendant's future dangerousness.[7]

Next, because certain of his capital offenses carry a life sentence as the only alternative to the death penalty, the defendant challenges the relevance of the sub-factor Low Rehabilitative

---

[6] The Court notes that although this is true for Counts 22 and 24, <u>see</u> 18 U.S.C. § 1959(a)(1), Counts 23 and 25 do not necessarily carry a minimum life sentence. <u>See</u> 18 U.S.C. § 924(j)(1) (authorizing punishment "by death or by imprisonment for any term of years or for life").

[7] To the extent the defendant suggests that certain of these sub-factors are unconstitutionally duplicative of each other, duplicative sub-factors are not unconstitutional, because each sub-factor falls under the umbrella of a single non-statutory aggravating factor: future dangerousness. <u>United States v. Mayhew</u>, 380 F. Supp. 2d 936, 950-51 (S.D.Ohio 2005); <u>United States v. Taylor</u>, 316 F. Supp. 2d 730, 742-43 (N.D. Ind. 2004); <u>United States v. Davis</u>, No. CR.A. 01-282, 2003 WL 1873088, at *10 (E.D. La. Apr. 10, 2003).

Potential. The defendant reasons that the issue before the jury is not whether he can be rehabilitated, but whether he would pose a continuing danger to others in federal prison.

This argument ignores the fact that although future dangerousness is the jury's overall inquiry, the defendant's potential for rehabilitation is directly relevant to his future dangerousness. See United States v. Gooch, No. 04-128-23, 2006 WL 3780781, at *29 (D.D.C. Dec. 20, 2006) ("[The defendant's] alleged low rehabilitative potential is relevant . . . as it bears on his future dangerousness in prison."). This case is not one where the criminal behavior alleged by the government would be wholly prevented by the defendant's incarceration. See United States v. Taveras, 424 F. Supp. 2d 446, 463-64 (E.D.N.Y. 2006) (excluding evidence of sexual abuse against minors to prove a defendant's future dangerousness, when it was highly unlikely the defendant would ever be released from prison). Rather, the government alleges by this sub-factor that the defendant's low potential for rehabilitation increases the likelihood that he will commit acts of violence against other prisoners and correctional officers throughout his incarceration. For these reasons, Low Rehabilitative Potential is a relevant sub-factor of Future Dangerousness.

Finally, the defendant raises a Fifth Amendment challenge to the sub-factor Lack of Remorse, which alleges that he "has never expressed any remorse for [the murders] as indicated by defendant's statements to fellow gang-members during the course of and following the offenses . . . ." (Doc. No. 275 at 5). There is nothing per se unconstitutional about considering a defendant's lack of remorse as a characteristic that favors imposition of the death penalty. See Zant, 462 U.S. at 885 n. 22 (noting that lack of remorse is an appropriate aggravating factor); see also United States v. Cooper, 91 F. Supp. 2d 90, 112-13 (D.D.C. 2000); Nguyen, 928 F. Supp. at 1541 (both citing Zant). However, the Fifth Amendment limits proof of lack of remorse to "affirmative words or conduct" expressed by the defendant. United States v. Caro, 597 F.3d 608, 627 (4th Cir. 2010)

(citing <u>United States v. Basham</u>, 561 F.3d 302, 334 (4th Cir. 2009), and <u>Emmett v. Kelly</u>, 474 F.3d 154, 170 (4th Cir. 2007)).

Given this restriction, the Court finds the government's allegation that the defendant "has never expressed any remorse" somewhat troubling. However, upon reading the sub-factor in its entirety, it seems clear that the government intends to offer only affirmative statements made by the defendant to others to prove his lack of remorse. Moreover, if necessary, the Court will offer an instruction to the jury that the defendant's mere silence may never be considered as proof of lack of remorse. <u>See</u> <u>Caro</u>, 597 F.3d at 630-31 (approving of a similar instruction). Thus, although the Fifth Amendment places restrictions on admissible evidence concerning the defendant's lack of remorse, it does not require the Court to strike this sub-factor from the government's Notice. The Court therefore denies the defendant's motion to strike Future Dangerousness and certain of its sub-factors.

D.      Gang Motivated Killing

The defendant moves to strike the non-statutory aggravating factor "Gang Motivated Killing" from the government's Notice as duplicative of both the criminal conduct alleged in Counts 22 and 24 of his Superseding Indictment and the non-statutory aggravating factor Future Dangerousness.[8] The defendant asserts that the duplicative nature of this aggravating factor violates the Eighth Amendment in the sense that it fails to narrow the class of persons eligible for the death penalty from those guilty of the underlying capital offense, which in the defendant's case is a violation of 18 U.S.C. § 1959(a)(1).

---

[8] In his motion, the defendant fails to specify which non-statutory aggravating factor is supposedly duplicative of Gang Motivated Killing, but the government addresses Future Dangerousness in its response. Absent a reply from the defendant, the Court assumes that this is the aggravating factor at issue.

In <u>Lowenfield v. Phelps</u>, 484 U.S. 231 (1988), the United States Supreme Court upheld a state capital sentencing scheme that required a jury to consider certain circumstances as both statutory elements of first-degree murder <u>and</u> aggravating factors. <u>Id.</u> at 241-43. Because each circumstance elevated the offense beyond a common-law murder, thereby "genuinely narrowing the class of death-eligible persons," there was nothing unconstitutional about the jury performing this narrowing function at the guilt phase of the trial. <u>Id.</u> at 244-45. Thus, "the fact that the aggravating circumstance duplicated one of the elements of the crime [did] not make the [the] sentence constitutionally infirm." <u>Id.</u> at 246. Federal courts, including the Fourth Circuit, have uniformly applied the <u>Lowenfield</u> holding to aggravating factors that duplicate elements of federal homicide statutes. <u>See</u> <u>Higgs</u>, 353 F.3d at 315-16 (upholding an aggravating factor that duplicated an element of 18 U.S.C. § 1111(a), causing death during the commission of a kidnapping); <u>see also</u> <u>Deputy v. Taylor</u>, 19 F.3d 1485, 1502 (3rd Cir. 1994) ("Following . . . <u>Lowenfield</u>, federal courts of appeals have consistently held that a sentencing jury can consider an element of the capital offense as an aggravating circumstance even if it is duplicitous.").

It is less clear, however, whether the same circumstance alleged as two separate non-statutory aggravating factors would comply with the Constitution. The Supreme Court has expressly declined to rule on this issue. <u>See</u> <u>Jones v. United States</u>, 527 U.S. 373, 398 (1999) (declining to decide whether "aggravating factors could be duplicative so as to render them constitutionally invalid"). Prior to the <u>Jones</u> decision, the Fourth Circuit held that permitting a jury to make "cumulative findings" during the penalty phase of trial creates a "clear risk of skewing the weighing process in favor of the death penalty and thereby causing it to be imposed arbitrarily, hence unconstitutionally." <u>United States v. Tipton</u>, 90 F.3d 861, 899 (4th Cir. 1996) (citing <u>Stringer v. Black</u>, 503 U.S. 222, 230-32 (1992)). Although <u>Tipton</u> concerned a jury's cumulative finding of

several death-eligible <u>mens rea</u> identical to those set forth in 18 U.S.C. § 3591(a)(2)(A)-(D), several district courts within the Fourth Circuit have concluded that <u>Tipton</u> also prohibits duplicative aggravating factors. <u>See</u>, <u>e.g.</u>, <u>Rivera</u>, 405 F. Supp. 2d at 668; <u>Grande</u>, 353 F. Supp. 2d at 631; <u>United States v. Regan</u>, 228 F. Supp. 2d 742, 750-51 (E.D.Va. 2002); <u>United States v. Johnson</u>, 136 F. Supp. 2d 553, 559 (W.D.Va. 2001). These courts have held that aggravating factors are impermissibly duplicative if they "necessarily subsume[ ]" each other. <u>Regan</u>, 228 F. Supp. 2d at 750 (quoting <u>United States v. McCullah</u>, 76 F.3d 1087, 1111 (10th Cir. 1996)). This occurs "when the factors in question substantially overlap, or the factor's elements necessarily include elements of another factor." <u>Id.</u>

As it relates to Counts 22 and 24 of his Indictment, the defendant's argument is foreclosed by <u>Lowenfield</u> and <u>Higgs</u>. In order to convict the defendant on Counts 22 and 24, the government will have to prove not only that he murdered Ruben and Manuel Salinas, but that he did so for the purpose of maintaining or increasing position in MS-13. 18 U.S.C. § 1959(a); (Doc. No. 623: Third Superseding Indictment ¶ 49&54). Thus, a guilty verdict on Count 22 or 24 "genuinely narrow[s] the class of death-eligible persons" from those who simply commit murder to those who commit murder for the purpose of maintaining or elevating position in a racketeering organization. <u>Lowenfield</u>, 484 U.S. at 244. Such a finding during the guilt phase of the trial would not prevent the government from properly re-alleging the same circumstance as an aggravating factor.

Moreover, Gang Motivated Killing is not duplicative of Future Dangerousness. Each aggravating factor relates to a different characteristic of the defendant: Gang Motivated Killing concerns the defendant's motive for committing a specific act of violence in the past, while Future Dangerousness concerns his propensity for violence in the future. The only overlap is found in the sub-factor Gang Membership, which alleges as evidence of the defendant's future dangerousness

that he "has demonstrated an allegiance to and active membership in MS-13, a violent criminal enterprise." (Doc. No. 275 at 5). Although the defendant's allegiance to MS-13 is certainly relevant to both factors, this single commonality does not create a substantial overlap between Gang Motivated Killing and Future Dangerousness, nor does it subsume the elements of one factor into the other. Regan, 228 F. Supp. 2d at 751. Thus, these aggravating factors are sufficiently distinguishable such that a finding of both would not impermissibly or arbitrarily skew the jury's weighing process in favor of the death penalty.

    E.    Callous Disregard for the Severity of the Offense

Finally, the defendant moves to strike the non-statutory aggravating factor "Callous Disregard for the Severity of the Offense" (hereafter "Callous Disregard") on the ground that it is unconstitutionally vague, irrelevant, and duplicative of the non-statutory aggravating factor future dangerousness.[9]

A factor is not unconstitutionally vague if it possesses "some 'common-sense core of meaning . . . that criminal juries should be capable of understanding . . . .' " Tuilaepa, 512 U.S. at 973 (1994) (quoting Jurek v. Texas, 428 U.S. 262, 279 (1976) (White, J., concurring in judgment)). However, "the proper degree of definition" required to withstand a vagueness challenge falls well short of "mathematical precision." Id. (quoting Walton v. Arizona, 497 U.S. 639, 655 (1990)). Moreover, a relevant aggravating factor is one that assists the jury "in distinguishing 'those who deserve capital punishment from those who do not . . . .' " United States v. McVeigh, 944 F. Supp. 1478, 1488 (D. Colo. 1996) (quoting Creech, 507 U.S. at 474); accord Johnson, 136 F. Supp. 2d at

---

[9] In his motion, the defendant again fails to specify which non-statutory aggravating factor is supposedly duplicative of Callous Disregard, and the government does not identify one in its response. After a review of the government's Notice, it seems likely that the defendant is again referring to Future Dangerousness.

558 ("[T]he aggravating factor must be sufficiently relevant to the question of who should live and who should die.") (internal quotations omitted). Courts have often emphasized that relevant evidence is "particularized to the individual defendant." United States v. Chong, 98 F. Supp. 2d 1110, 1116 (D. Hawai'i 1999) (citing United States v. Frank, 8 F. Supp. 2d 253, 279 (S.D.N.Y.1998)). If the aggravating factor bears only a "tangential relationship" to whether the defendant deserves the death penalty, it should be excluded. Rivera, 405 F. Supp. 2d at 668. Finally, aggravating factors are not duplicative unless they substantially overlap, or the elements of one necessarily include the elements of another. Regan, 228 F. Supp. 2d at 751.

Callous Disregard is neither unconstitutionally vague nor irrelevant. As is noted supra, general constitutional challenges to Lack of Remorse, a similar factor, have failed. See Cooper, 91 F. Supp. at 112-13; Nguyen, 928 F. Supp. at 1541 (both citing Zant, 462 U.S. at 885 n. 22) In order to prove his callous disregard for the severity of these offenses, the government will have to show that the defendant, through his words and actions, failed to appreciate the gravity of killing two human beings. This has a "common-sense core of meaning" sufficient to overcome any vagueness concerns. Jurek, 428 U.S. at 279 (White, J., concurrin). Moreover, the factor is also relevant, because whether the defendant appreciated the gravity of his actions relates to his individual character and provides one legitimate basis to distinguish whether the death penalty is justified in this particular case. Creech, 507 U.S. at 474. Thus, Callous Disregard is sufficient to overcome vagueness and relevance challenges.

Greater concerns are raised by the defendant's claim that Callous Disregard is duplicative of Future Dangerousness. Both the government and the Court have likened the concept of callous disregard for the severity of the offense to a lack of remorse, which the government also alleges in its Notice as a sub-factor of Future Dangerousness. (Doc. No. 275 at 5). As a starting point, the

Court recognizes the difference between alleging lack of remorse in its own right and alleging of lack of remorse as it relates to the defendant's future dangerousness. Moreover, Lack of Remorse is alleged as only one of four sub-factors of Future Dangerousness, each of which is meant to explain rather than supplant that aggravating factor. But despite these distinctions, a possibility exists that the jury could interpret the government's Notice as suggesting that a finding of Lack of Remorse automatically results in a finding of both Future Dangerousness and Callous Disregard. In this sense, the jury could perceive that the elements of Callous Disregard necessarily subsume the elements of Future Dangerousness. <u>Regan</u>, 228 F. Supp. 2d at 750. To eliminate this risk, the Court grants the defendant's motion to strike Callous Disregard from the government's Notice. No part of the Court's ruling on this matter shall prevent the government from arguing the defendant's lack of remorse as proof of his future dangerousness.

IV.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1.    The "Defendant's Motion to Strike Non-Statutory Aggravating Factors and Exclude Evidence of Unadjudicated Criminal Acts During Penalty Phase of Trial" (Doc. No. 483) is **DENIED**;

2.    The defendant's "Motion to Strike the Non-Statutory Aggravating Factor of Future Dangerousness from the Notice of Intent to Seek the Death Penalty" (Doc. No. 968) is **DENIED**;

3.    The "Defendant's Motion to Strike Non-Statutory Aggravating Factors from Notice of Intent to Seek the Death Penalty" (Doc. No. 488) is **GRANTED IN PART** and **DENIED IN PART**; that is, **GRANTED** such that the Court **STRIKES** the non-statutory aggravating factor "Callous Disregard for the Severity of the Offense" from

the government's Notice of Intention to Seek the Death Penalty (Doc. No. 275), and **DENIED** in all other respects; and

4. Should the defendant's trial proceed to the penalty phase, the government shall present to the Court and to the defendant information it intends to introduce as unadjudicated conduct for a determination of reliability. Only if the government satisfies that threshold determination will such evidence be presented to the jury.

Signed: April 19, 2010

Robert J. Conrad, Jr.
Chief United States District Judge