# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:08CR134-RJC

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| ALEJANDRO ENRIQUE RAMIREZ ) | |
| UMANA, ) | |
|     a/k/a "Wizard" ) | |
|         "Lobo" ) | |
| ) | |
|         **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on the government's "Cross-Motion in Limine Regarding Generalized Prison-Security Information" (Doc. No. 992) filed April 14, 2010; and the defendant's Response (Doc. No. 1014) filed April 22, 2010. For the reasons stated below, the Court **DENIES** the government's motion in limine.

I.     BACKGROUND

The defendant stands convicted by a jury of multiple federal offenses arising out of his affiliation with La Mara Salvatrucha, also known as the MS-13 gang (hereafter "MS-13"). Count 1 charged the defendant with a RICO conspiracy, in violation of 18 U.S.C. § 1962(d). As an overt act in furtherance of this conspiracy, the defendant was charged with murdering two individuals, Ruben Garcia Salinas and Manuel Garcia Salinas, in a restaurant in Greensboro, North Carolina. These murders were also charged separately in Counts 22 and 24 as murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), and in Counts 23 and 25 as use of a firearm during and in relation to a crime of violence resulting in death, in violation of 18 U.S.C. § 924(j). As required by the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 et seq., the government has given notice of its intention to seek the death penalty in light of the defendant's convictions on Counts 22, 23,

1

24, and 25. (Doc. No. 275: Notice).

The government's Notice alleges the defendant's future dangerousness as a non-statutory aggravating factor in favor of the death penalty. (Doc. No. 275 at 4 & 7). Because Counts 22 and 24 carry a minimum life sentence, see 18 U.S.C. § 1959(a)(1), the government necessarily alleges that the defendant would pose a danger to others even while incarcerated in federal prison. To rebut the government's allegation of future dangerous, the defendant intends to call two expert witnesses in the fields of inmate violence and prison security, Dr. Mark Cunningham, a forensic psychologist, and Mark Bezy, a former warden of a Bureau of Prisons facility. The defendant states that these witnesses will offer expert opinions that the Bureau of Prisons is capable of safely housing the defendant for the duration of a life sentence, regardless of the conduct alleged by the government.

The defendant filed a motion for discovery related to this subject of testimony under Fed. R. Crim. P. 16 and Brady v. Maryland, 373 U.S. 83 (1963), which the Court denied. (Doc. No. 997: Order). In responding to the defendant's motion for discovery, the government filed a cross-motion in limine to exclude testimony from Dr. Cunningham regarding general prison security or typical inmate behavior. Because the government has alleged specific conduct and individual characteristics that demonstrate the defendant's future dangerousness, the government argues that general evidence of security measures or inmate discipline within the Bureau of Prisons is wholly irrelevant to rebut these allegations. The Court disagrees.

II.     LEGAL FRAMEWORK

Both the Constitution and the FDPA afford the defendant an opportunity to offer evidence in rebuttal of the government's evidence of aggravating factors. See 18 U.S.C. § 3593(c) (requiring that "the defendant shall be permitted to rebut any information received at the hearing"); Gardner v. Florida, 430 U.S. 349, 361-62 (1977) (finding it a violation of due process to sentence a defendant to death "on the basis of information which he had no opportunity to deny or explain"). If a

defendant's only alternative to the death penalty is life in prison, the Supreme Court has specifically identified evidence of that fact, as well any good behavior during previous periods of incarceration, as proper rebuttal evidence to an allegation of future dangerousness. See Simmons v. South Carolina, 512 U.S. 154, 168-69 (1994); Skipper v. South Carolina, 476 U.S. 1, 5 n.1 (1986).

At the same time, a defendant may not offer general evidence of prison conditions or security as a stand-alone mitigating factor. See Schmitt v. Kelly, 189 F. App'x 257, 264 n. 5 (4th Cir. July 13, 2006) (unpublished per curiam opinion). See also United States v. Caro, 483 F. Supp. 2d 513, 520 (W.D.Va. 2007); United States v. Johnson, 233 F.3d 665, 675 (7th Cir. 2000). Thus, such evidence is admissible only to rebut a specific allegation that the defendant poses a continuing danger to others in prison. See United States v. Taylor, 583 F Supp. 2d. 923, 936-38 (E.D. Tenn. 2008) (excluding evidence of prison security to rebut allegations of future dangerousness that related solely to conduct occurring outside of prison). Moreover, "evidence that merely describes the general conditions of incarceration" is irrelevant and inadmissible if it fails to show "how the conditions of confinement would affect a particular defendant." Schmitt, 189 F. App'x at 265.

III. DISCUSSION

In this case, almost all of the government's evidence of future dangerousness relates to one form of prison violence or another. To prove his future dangerousness, the government offered evidence during its case-in-chief that while in federal or state custody awaiting trial, the defendant has: (1) assaulted another inmate; (2) fashioned weapons and attempted to hide them on his person; (3) attempted to assault a corrections officer; (4) continued to organize and operate MS-13 from within prison; and (5) directed others to assault or kill cooperating witnesses, some of whom were also incarcerated. The government has offered all of this evidence to show that the defendant poses a continuing danger to correctional officers and other inmates. In short, the government alleges that the defendant will never stop harming others in prison unless he is put to death. In light of these

3

specific allegations, the expert testimony offered by Dr. Cunningham is within the scope of evidence the defendant may offer to rebut future dangerousness.

In so holding, the Court finds the instant case distinguishable from the Fourth Circuit's unpublished opinion in Schmitt v. Kelly. There, the court denied habeas relief to a petitioner challenging his death sentence, issued by the Commonwealth of Virginia, on the ground that he was prevented at trial from offering evidence of general prison security to rebut an allegation of future dangerousness. Holding that the Commonwealth's exclusion of such evidence was not an unreasonable application of Simmons, Gardner, and Skipper, the court noted that these Supreme Court precedents "do not define rebuttal evidence to include evidence that merely describes the general conditions of incarceration, as opposed to evidence about how the conditions of confinement would affect a particular defendant." Schmitt, 189 F. App'x at 265.

Here, Dr. Cunningham intends to offer an "appraisal of [Bureau of Prisons] security measures and confinement conditions that can be applied to Mr. Umana to substantially reduce the probability of serious prison violence." (Doc. No. 984-1: Cunningham Declaration ¶ 2). To the extent that Dr. Cunningham will testify as to the rates of prisoner violence at various security levels within the Bureau of Prisons, it appears that he intends to use these statistics to make an individualized prediction of whether the defendant will commit future acts of violence. (Id. ¶ 9-15). He will attempt, therefore, to draw conclusions about how various conditions of confinement would affect this "particular defendant." Schmitt, 189 F. App'x at 265. Recognizing this, several district courts have allowed Dr. Cunningham to offer similar testimony in capital cases where the government has alleged the defendant's future dangerousness. See United States v. Wilson, 493 F. Supp. 2d 491, 508 (E.D.N.Y. 2007) (citing to Schmitt, 189 F. App'x at 264, but finding it distinguishable); United States v. Caro, No. 1:06cr1, 2007 WL 419525, at *1-2 (W.D.Va. 2007) (later refusing to offer an instruction of such evidence as a stand-alone mitigating factor); United

4

States v. Sampson, 335 F. Supp. 2d 166, 227-28 (D. Mass. 2004). Upon the allegations present in this case, Dr. Cunningham's testimony is relevant to the jury's assessment of the defendant's future dangerousness in prison.

In sum, while the government may argue the validity of Dr. Cunningham's methodologies to the jury, it may not categorically exclude his testimony as improper rebuttal evidence. The Court notes, however, that the expert testimony addressed herein remains subject to the overall evidentiary standard set forth in the FDPA. Although Dr. Cunningham may give an opinion of the defendant's future dangerousness, he may not offer legal opinions or make unduly speculative predictions regarding the defendant's conditions of incarceration that are likely confuse or mislead the jury. See 18 U.S.C. § 3593(c).

IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the government's "Cross-Motion in Limine Regarding Generalized Prison-Security Information" (Doc. No. 992) is **DENIED**.

Signed: April 26, 2010

Robert J. Conrad, Jr.
Chief United States District Judge