IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:08CR134-RJC

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| ALEJANDRO ENRIQUE RAMIREZ ) | |
| UMANA, ) | |
|     a/k/a "Wizard" ) | |
|         "Lobo" ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on the government's "Motion in Limine to Preclude Information and Argument regarding 'Equally Culpable' Defendants and Proportionality" (Doc. No. 996) filed April 19, 2010. For the reasons stated below, the Court **GRANTS** the government's motion in limine.

I.     BACKGROUND

The defendant was one of 26 co-defendants charged in a Superseding Indictment (Doc. No. 623) with multiple federal offenses arising out of his affiliation with La Mara Salvatrucha, also known as the MS-13 gang. Count 1 charged each co-defendant with a RICO conspiracy, in violation of 18 U.S.C. § 1962(d). As an overt act in furtherance of this conspiracy, the defendant was charged with murdering Ruben Garcia Salinas and Manuel Garcia Salinas on December 8, 2007, in a restaurant in Greensboro, North Carolina (the "Greensboro murders"). The Greensboro murders were also charged separately in Counts 22 and 24 as murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), and in Counts 23 and 25 as use of a firearm during and in relation to a crime of violence resulting in death, in violation of 18 U.S.C. § 924(j). As required by the Federal Death Penalty Act ("FDPA"), 18 U.S.C. § 3591 et seq., the government gave notice of its intention to seek

1

the death penalty in the event the defendant was found guilty on Counts 22, 23, 24, or 25. (Doc. No. 275: Notice).

The Indictment also charged several of the defendant's co-conspirators with homicide offenses related to the underlying RICO conspiracy charged in Count 1. As an overt act of the RICO conspiracy, Johnny Elias Gonzalez, a.k.a. "Solo," was charged with the commission of a robbery resulting in death. Count 26 charged Julio Cesar Rosales Lopez, a.k.a. "Stiler," and Cesar Yoaldo Castillo, a.k.a. "Chino," as accessories after the fact to the Greensboro murders, in violation of 18 U.S.C. §§ 3 and 2. Counts 51 and 52 charged Elvin Pastor Fernandez-Gradis, a.k.a. "Tigre," with a different murder in aid of racketeering, in violation of 18 U.S.C. §§ 1959(a)(1) and 924(j). Count 53 charged Santos Anibal Caballero Fernandez, a.k.a. "Garra," with being an accessory after the fact to that murder, in violation of 18 U.S.C. § 3. Each of these co-defendants has either entered into a plea agreement with the government or was found guilty after a jury trial conducted before the Court. None, however, faces a possible sentence of death.

The defendant's case proceeded to trial. On April 19, 2010, a jury returned a guilty verdict convicting the defendant of all counts. Thus, the defendant's trial is now in a capital sentencing phase governed by the FDPA. See 18 U.S.C. §§ 3591-93. At his sentencing hearing, the defendant may present evidence of mitigating factors that weigh against imposition of the death penalty. See 18 U.S.C. § 3592(a). The government now moves in limine to preclude the defendant from arguing, as a mitigating factor, that certain of his co-conspirators, including the co-defendants described supra, have committed comparable crimes in furtherance of the same underlying RICO conspiracy, but will not be sentenced to death.

II. LEGAL FRAMEWORK

The Eighth Amendment requires that a defendant facing a possible capital sentence be given the opportunity to present evidence of "any aspect of a [his] character or record and any of the

circumstances of the offense that the defendant proffers as a basis for a sentence less than death." Lockett v. Ohio, 438 U.S. 586, 604 (1978). The FDPA lists a number of statutory mitigating factors for which a defendant may present evidence, including whether "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death." 18 U.S.C. § 3592(a)(4). Additionally, a defendant may present any "[o]ther factors in the defendant's background, record, or character or any other circumstance of the offense that mitigate against imposition of the death sentence." 18 U.S.C. § 3592(a)(8).

III. DISCUSSION

The government's motion in limine challenges whether the defendant may offer mitigating evidence of other crimes committed by his co-conspirators in furtherance of the same RICO conspiracy underlying the defendant's capital offenses. The Court considers whether the defendant may argue evidence of these acts as a statutory mitigating factor under § 3592(a)(4) or, in the alternative, as a non-statutory mitigating "circumstance of the offense." 18 U.S.C. § 3592(a)(8); see also Lockett, 438 U.S. at 604. The first inquiry is one of statutory construction; the second is constitutional.

A. Evidence of Other Crimes as a Statutory Mitigating Factor

Section 3592(a)(4) of the FDPA requires the sentencing jury to consider mitigating evidence that "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death," but the term "crime" is not defined therein. To discern the correct meaning of this term, the Court "must begin with the plain language of the statute, and absent ambiguity or a clearly expressed legislative intent to the contrary, the statute must be given its plain meaning." United States v. Bell, 5 F.3d 64, 68 (4th Cir. 1993) (citing United States v. Sheek, 990 F.2d 150, 152 (4th Cir. 1993)). A plain reading of the FDPA indicates that the term "crime" as it appears in § 3592(a)(4) means the specific offense or offenses for which the government seeks the death penalty.

With the limited exception of certain drug trafficking offenses not charged here, the FDPA does not itself authorize the death penalty for any particular offense. See 18 U.S.C. § 3591. It merely establishes a special sentencing procedure for offenses that are already categorized as capital. Id. Upon the defendant's conviction of an "offense for which a sentence of death is provided," section 3591(a)(2) requires a sentencing jury to determine first whether the defendant has committed a homicide with one of four death-eligible mens rea. If this threshold is met, the jury must then consider aggravating and mitigating factors authorized in § 3592, and perform an ultimate balancing of these factors at the conclusion of a special hearing required under § 3593. 18 U.S.C. § 3591(a). Clearly, the procedures outlined in §§ 3592 and 3593 relate back to the capital offense that triggers the FDPA in the first place. These provisions have no applicability whatsoever to non-capital offenses. Thus, when § 3592(a)(4) refers to other "defendants, equally culpable in the crime," the term "crime" plainly means the capital offense or offenses for which the defendant has been convicted.

Here, the defendant's capital offenses are two counts of murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(1), and two counts of use of a firearm during and in relation to a crime of violence resulting in death, in violation of 18 U.S.C. § 924(j). The essential elements of these crimes alleged the defendant's commission of the Greensboro murders. By the plain language of the FDPA, these murders are the "crimes" for which the defendant may present mitigating evidence of equally culpable defendants. See United States v. Regan, 221 F. Supp. 2d 659, 660 (E.D.Va. 2002) ("The plain language of section 3592(a)(4) limits the jury's consideration to co-defendants, co-conspirators, or accomplices of the defendant in the capital crime before the jury, not any similar crime."). Consistent with this approach, capital cases in which courts have approved of an "equally culpable" mitigating instruction involved an accomplice in the actual capital offense against whom the government had declined to seek the death penalty. See United States v. Higgs,

4

353 F.3d 281, 326 (4th Cir. 2003); United States v. Llera Plaza, 181 F. Supp. 2d 414, 421 (E.D.Pa. 2002).

To the extent that any ambiguity exists, it is due to the fact that the Greensboro murders, while charged separately as capital offenses, were also alleged as an overt act of the RICO conspiracy. The Court considers whether this connection between the underlying RICO conspiracy and the capital offenses should incorporate the underlying RICO conspiracy into the definition of "crime" for purposes of § 3592(a)(4). In United States v. Beckford, 962 F. Supp. 804 (E.D.Va. 1997), a district court within this circuit addressed a nearly identical issue. There, a defendant had been charged with multiple federal offenses arising out of a drug conspiracy, including the capital offense killing in furtherance of a Continuing Criminal Enterprise ("CCE"), in violation of 21 U.S.C. § 848(e). At that time, sub-sections 848(g)-(r) governed the sentencing procedure for capital offenses under § 848(e).[1] Identical to the FDPA's parallel provision, sub-section 848(m)(8) required the sentencing jury to consider, as a mitigating factor, evidence that "[a]nother defendant or defendants, equally culpable in the crime, will not be punished by death." In preparation for trial, the defendant requested pursuant to Brady v. Maryland, 373 U.S. 83 (1963), any evidence in the government's possession related to any other crimes committed by his co-conspirators in furtherance of the underlying CCE. Beckford, 962 F. Supp. at 812. The object of this request was to gather mitigation evidence of "equally culpable" defendants pursuant to § 848(m)(8).

After analyzing the statute, the district court in Beckford determined that "[t]he plain language of Section 848 clearly supports the proposition that the 'crime' referred to in (m)(8) is the capital murder charged under 848(e)(1)." Id. at 814. Although other co-conspirators may have

---

[1] These sub-sections were repealed in 2006, see Pub.L. 109-177, 120 Stat. 231, 232, and sentencing procedures for capital offenses under § 848(e) are now governed by the FDPA. See United States v. Stitt, 552 F.3d 345, 352 (4th Cir. 2008).

committed crimes in furtherance of the same CCE underlying the defendant's capital offenses, the district court ultimately relied upon the plain language of § 848(m)(8) and denied the defendant's Brady request to the extent it attempted to address other crimes than the defendant's capital offenses. Id. at 815.

Applying the plain language of the FDPA and the well-reasoned Beckford decision, the Court finds that the plain language of § 3592(a)(4) should control: statutory mitigating evidence of equal culpability includes only evidence of complicity in the capital offenses for which the defendant is charged. Evidence of other crimes in furtherance of the same underlying RICO conspiracy are outside the scope of § 3592(a)(4). Thus, in this case, any mitigating evidence under § 3592(a)(4) relates only to co-defendants Lopez and Castillo, charged under 18 U.S.C. §§ 3 and 2 as accessories after the fact to the Greensboro murders. Although the evidence has shown that neither participated directly in the murders, their liability as accessories after the fact is sufficiently similar to that of an accomplice[2] to allow the defendant to present mitigating evidence of their conduct under § 3592(a)(4). Other crimes, even those committed in furtherance of the same underlying RICO conspiracy, are outside the scope of § 3592(a)(4).

B. Evidence of Other Crimes as a Non-Statutory Mitigating Factor

Ineligible as a statutory mitigating factor, the Court next considers whether the defendant may present evidence of other crimes committed by co-conspirators as a non-statutory mitigating factor. It is clear that he may not. The need for "proportionality review" in capital sentencing—a comparative study of penalties sought in other, even similar, crimes—has been flatly rejected by the Supreme Court and the Fourth Circuit. See Pulley v. Harris, 465 U.S. 37, 43-44 (1984) (holding that

---

[2] See 18 U.S.C. § 3 ("Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact.").

the Eighth Amendment does not require state capital sentencing schemes to review penalties imposed in similar cases); Higgs, 353 F.3d at 321 (applying Pulley to reject a defendant's claim that the FDPA's lack of proportionality review violates the Eighth Amendment).

Advancing as a mitigating circumstance the penalties sought for other offenses, even those related to the defendant's underlying RICO conspiracy, amounts to a request for proportionality review. Neither the FDPA nor the Constitution grants the defendant a right to such review. Moreover, it would likely confuse and mislead the jury, requiring an analysis far afield from the defendant's characteristics or circumstances of his offenses. See United States v. Taylor, 583 F. Supp. 2d 923, 935-36 (E.D. Tenn. 2008); United States v. Caro, 461 F. Supp. 2d 459, 465 (W.D.Va. 2006). See also Lockett, 438 U.S. at 604 n. 12 (preserving "the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense"). Because evidence of other crimes committed by the defendant's co-conspirators is irrelevant to his character or the circumstances of his offenses, and is likely to confuse and mislead the jury, the defendant may not present such evidence as a non-statutory mitigating factor.

IV.     CONCLUSION

**IT IS, THEREFORE, ORDERED** that the government's "Motion in Limine to Preclude Information and Argument regarding 'Equally Culpable' Defendants and Proportionality" (Doc. No. 996) is **GRANTED**. The defendant may not present mitigating evidence related to crimes other than the capital offenses for which the defendant has been charged.

Signed: April 28, 2010

Robert J. Conrad, Jr.
Chief United States District Judge